UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMADO HARO and ROCHELLE ORTEGA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC.,<br><br>Defendant. | No. 1:21-cv-00239-ADA-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINIFFS' MOTION TO STRIKE BE DENIED, PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION BE GRANTED, AND RECOMMENDING PLAINIFFS' PROPOSED COLLECTIVE ACTION NOTICE PLAN BE APPROVED IN PART**<br><br>**(Docs. 41, 44, 70)** |

## I.     INTRODUCTION

Before the Court is Plaintiffs Amado Haro and Rochelle Ortega ("Plaintiffs")'s motion for conditional certification of collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Doc. 41), proposed collective action notice plan (Doc. 44), and motion to strike employee declarations submitted by Defendant Walmart, Inc. ("Walmart") (Doc. 70). For the reasons set forth below, the undersigned RECOMMENDS that Plaintiffs' motion to strike be DENIED, Plaintiffs' motion for conditional certification be GRANTED, and that Plaintiffs' proposed notice plan be APPROVED IN PART.

1

## II.     BACKGROUND

On February 23, 2021, Plaintiffs filed this class and collective action, individually and on behalf of all others similarly situated, alleging that Walmart implemented an unlawful policy requiring its non-exempt, hourly workers to undergo COVID-19 screenings prior to clocking in for their shifts without overtime pay. (Doc. 1 at ¶ 1; Doc. 41-1 at 7, 16.) Specifically, Plaintiffs contend that pursuant to this policy, regardless of the employees' specific job titles, job duties, or store location, non-exempt Walmart employees were required to wait in line, spend time undergoing COVID-19 screenings, and walk from the screening location to the area of the store to clock in. (Doc. 41-1 at 21–22.) Plaintiffs assert that these COVID-19 screenings constitute physical and medical examinations that are compensable time under both the FLSA and the California Labor Code, and that, by failing to pay overtime wages for time spent in the screenings, Walmart violated California and federal law. (Doc. 1 at ¶¶ 1–3; Doc. 41-1 at 7.)

Plaintiffs filed their conditional certification of collective action motion on August 15, 2022. (Doc. 41.) In support of the motion, Plaintiffs submit evidence including declarations from several experts (*see* Docs. 49-5, 49-6) and 12 current or former Walmart employees from locations across the country[1] (*see* Doc. 49-7 ("Haro Decl."); Doc. 49-8 ("Ortega Decl."); Doc. 49-9 ("Hernandez Decl."); Doc. 49-12 ("Lewis Decl."); Doc. 49-13 ("Sanchez Decl."); Doc. 49-14 ("Gibson Decl."); Doc. 49-15 ("Gumataotao Decl."); Doc. 49-16 ("Elias Decl."); Doc. 49-17 ("West Decl."); Doc. 49-19 ("Riley Decl."); Doc. 49-20 ("Newman Decl."); Doc. 49-21 ("McNaught Decl.")). Plaintiffs also submit transcripts of multiple depositions, including depositions of the two named Plaintiffs in this case. (*See* Docs. 49-22; 49-23; 49-24; 49-25; 49-26; 49-28; 49-29.)

Plaintiffs seek to conditionally certify the following California collective:

> All current and former hourly-paid employees of Walmart who underwent a COVID-19 screening during at least one week in California at any time from April 10, 2020, through the date when Walmart ended the screening practices in California.

Plaintiffs also seek to conditionally certify the following nationwide collective:

---

[1] The undersigned previously granted the parties' joint stipulation to withdraw three declarations from former or current Walmart employees. (*See* Doc. 57.) Plaintiffs also agree that the Court may disregard citations to the declaration of their third expert, Dr. Richard Drogin (Doc. 49-4), for purposes of the FLSA motion. (*See* Doc. 69 at 3.)

2

> All current and former hourly-paid employees of Walmart who underwent a COVID-19 screening during at least one week outside of California at any time from April 10, 2020, through the date when Walmart ended the screening practices in that state.[2]

Plaintiffs allege that these workers are "similarly situated" within the meaning of the FLSA because they all were: (1) non-exempt, hourly paid employees of Walmart; (2) "required to undergo the COVID-19 health screenings before clocking in for work;" (3) "subject to Walmart's uniform screening policies and practices;" (4) "subject to the same or substantially similar screening procedures established by Walmart;" and (5) "subject to the same Walmart compensation policy to pay these workers for only 5 minutes to account for the COVID-19 screening regardless of whether the waiting time, screening time, and/or walking time took more than 5 minutes." (Doc. 41 at 3.) Plaintiffs request that the Court conditionally certify the proposed collectives and that direct notice be sent to the proposed members. (*Id.*)

### III. DISCUSSION

**A. Plaintiffs' Motion to Strike**

Plaintiffs move to strike the declarations provided by Walmart in support of its opposition to collective certification. (Doc. 70; *see also* Doc. 59 at 15; Doc. 58-1.) "At the pre-certification stage of an FLSA collective action, '[a]s a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit.'" *Ward v. Sutter Valley Hosp.*, No. 2:19-cv-00581-KJM-AC, 2022 WL 2805965, at *5 (E.D. Cal. July 18, 2022). Courts have held that, "on a motion for class certification, the evidentiary rules are not strictly applied and courts can consider evidence that may not be admissible at trial." *Syed v. M-I, L.L.C.*, No. 1:12–CV–1718 AWI MSJ, 2014 WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014) (internal quotations omitted). Thus, at this early stage in the proceedings, the Court may consider the declarations provided by Walmart even if this evidence is assigned little weight or later deemed inadmissible at trial.

Moreover, "'the question "is not whose evidence regarding commonality is more believable, but simply whether [P]laintiffs have made an adequate threshold showing."'" *Droesch*

---

[2] Walmart requested (Doc. 59 at 30–31), and Plaintiffs agreed (Doc. 67 at 20), to modify the relevant time period for the collectives to April 10, 2020, to the date when Walmart ended the screening practices in each state.

*v. Wells Fargo Bank, N.A.*, No. 20-cv-06751-JSC, 2021 WL 1817058, at *3 (N.D. Cal. May 6, 2021). As discussed below, the undersigned finds Plaintiffs have sufficiently shown that collective certification is proper. Accordingly, the undersigned recommends denying Plaintiffs' request to strike the declarations submitted by Walmart.

**B.      The FLSA Collectives**

    **1.      Personal Jurisdiction**

As a preliminary matter, relying on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773 (2017), Walmart contends that this Court does not have personal jurisdiction over the claims of potential opt-in plaintiffs from outside of California. (Doc. 59 at 18–20.) Plaintiffs contend federal courts in California have held that *Bristol-Myers* does not apply to FLSA collective actions and that this challenge, raised in Walmart's opposition to Plaintiffs' motion for conditional certification, has been waived because Walmart made general appearances and did not timely object to personal jurisdiction. (Doc. 67 at 19–20.) The undersigned finds that Walmart has waived this jurisdictional challenge due to its failure to raise it at the first available opportunity.

Federal Rule of Civil Procedure 12 permits a party to request dismissal on the basis that a court lacks personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). However, such a defense is waived if a party fails to either "(i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1)(B). "This strict waiver rule extends only to defenses then available." *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 854 (N.D. Cal. 2018) (internal quotations omitted); *see also* Fed. R. Civ. P. 12(g)(2). "To show a defense was not previously available, a defendant must demonstrate that it 'would have been directly contrary to controlling precedent in this Circuit.'" *Sloan*, 287 F. Supp. 3d at 854.

The Supreme Court decided *Bristol-Myers* on June 19, 2017, several years before Plaintiffs commenced this class and collective action on February 23, 2021. (*See* Doc. 1.) In *Bristol-Myers*, the Supreme Court made clear that its decision neither changed existing law nor created a new defense that was previously unavailable. *See Bristol-Myers*, 137 S. Ct. at 1781 ("Our settled

1    principles regarding specific jurisdiction control this case."); *id.* at 1783 ("Our straightforward
2    application in this case of settled principles of personal jurisdiction will not result in the parade of
3    horribles that respondents conjure up."); *see also Sloan*, 287 F. Supp. 3d at 854 ("*Bristol-Myers* did
4    not reverse any Ninth Circuit precedent foreclosing Defendant's [personal jurisdiction] challenge").

5    Throughout the pendency of this litigation, Walmart has filed both an answer (Doc. 13) and
6    a motion for summary judgment (Doc. 31) that was later withdrawn (*see* Doc. 40). As Plaintiffs
7    accurately describe (Doc. 67 at 20), Walmart did not challenge personal jurisdiction over the claims
8    of the non-California opt-in plaintiffs at the first opportunity, but rather, as a part of its opposition
9    to Plaintiffs' motion for conditional certification. Because the personal jurisdiction defense under
10   *Bristol-Myers* was available to Walmart even before the commencement of this action, the
11   undersigned finds that the argument has been waived. *See Sloan*, 287 F. Supp. 3d at 854.

12   Even if Walmart's challenge had not been waived, the undersigned finds that *Bristol-Myers*
13   does not divest this Court of jurisdiction. In *Bristol-Myers*, the Supreme Court held that a California
14   state court did not have personal jurisdiction over claims under California law in a mass tort action
15   by plaintiffs who were not injured in or otherwise connected to California. *Bristol-Myers*, 137 S.
16   Ct. at 1775–77. The *Bristol-Myers* Court did not have occasion to address whether its holding
17   applied to FLSA collective actions, the very issue raised by Walmart's personal jurisdiction
18   challenge. *See Bristol-Myers*, 137 S. Ct. 1783–84 ("since our decision concerns the due process
19   limits on the exercise of specific jurisdiction *by a State*, we leave open the question whether the
20   Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction *by a federal*
21   *court*.") (emphasis added). District Courts have been split on whether the holding articulated in
22   *Bristol-Myers* applies to FLSA collective actions, and the Ninth Circuit has yet to address the issue.
23   *See, e.g., Sloan*, 287 F. Supp. 3d at 858–59; *Arends v. Select Med. Corp.*, No. CV 20-11381 TJH
24   (AGRx), 2021 WL 4452275, at *1 (C.D. Cal. July 7, 2021); *see also Chavez v. Stellar Mgmt. Grp.*
25   *VII, LLC*, No. 19-cv-01353-JCS, 2020 WL 4505482, at *6–7 (N.D. Cal. Aug. 5, 2020) (collecting
26   cases). Following other federal courts in California, the undersigned finds that *Bristol-Myers* does
27   not apply to FLSA claims brought in federal court. *See Sloan*, 287 F. Supp. 3d at 858–59 ("where
28   a federal court presides over litigation involving a federal question, the due process analysis does

not incorporate the interstate sovereignty concerns that animated *Bristol-Myers* and which may be 'decisive" in a state court's analysis.") (footnote omitted); *Arends*, 2021 WL 4452275, at *1 ("This Court will follow the thirteen other districts that have held that *Bristol-Myers* does not apply to FLSA actions" and accordingly, "has jurisdiction over the out of state putative class members and defendants."); *Chavez*, 2020 WL 4505482, at *7–8 (holding that *Bristol-Myers* does not apply to federal courts applying federal law, and, in following district courts that applied *Sloan*, finding that "the federalism concerns that drove the Supreme Court in *Bristol-Myers*" were absent in the FLSA collective action before the court).

The fact that the Court has personal jurisdiction over the claims at issue in this case, however, is not determinative as to whether a nationwide collective should be certified. Accordingly, the undersigned turns to whether Plaintiffs have met their burden in showing that the members of the proposed collective are "similarly situated" for purposes of the FLSA such that conditional certification is warranted.

**2.   Legal Standard**

The FLSA establishes an opt-in collective action procedure for employees allegedly denied wages and overtime pay. 29 U.S.C. § 216(b). Under the FLSA, "one or more employees" may file a collective action on behalf of himself or herself and "other employees similarly situated." *Id*.; *Millan v. Cascade Water Servs., Inc*., 310 F.R.D. 593, 607 (E.D. Cal. 2015).

"There is no established definition of the FLSA's 'similarly situated' requirement, nor is there an established test for enforcing it." *Campbell v. City of L.A.*, 903 F.3d 1090, 1111 (9th Cir. 2018). The Ninth Circuit interpreted the statutory term in *Campbell*, determining that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent that they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 1117; *see also Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019).

In *Campbell*, the Ninth Circuit approved a two-step approach for determining whether a FLSA collective action may proceed. *Campbell*, 903 F.3d at 1110 ("[A]s a general rule, the two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose

promise is not borne out by the record."). As for the first step, "at or around the pleading stage, plaintiffs will typically move for preliminary certification." *Id*. at 1109. "At this early stage of the litigation," the Court's analysis is often "focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id*. The Ninth Circuit stated that the level of consideration at this step, known as the notice stage, is "'lenient,'" "sometimes articulated as requiring 'substantial allegations'" or "turning on a 'reasonable basis,'" but, in any event, "loosely akin to a plausibility standard" commensurate with the beginning stage of the proceedings. *Id*.; *see also Droesch*, 2021 WL 1817058, at *3 ("At the first stage, 'conditional certification is by no means automatic, but Plaintiffs' burden is light.'"). "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the ligation." *Campbell*, 903 F.3d at 1109. "Denial of preliminary certification may be without prejudice and may be revisited by the district court after further discovery." *Id*. "Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery." *Id*. At the second step, the employer may "move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point," and the Court takes "a more exacting look at the plaintiffs' allegations and the record." *Id*.

**3.    Analysis**

a.    <u>Conditional Certification</u>

As the parties appear to agree (*see* Doc. 67 at 8) and because relevant discovery has not yet been completed, the case is at the preliminary certification stage. Accordingly, the undersigned proceeds with the first step and applies the "'lenient'" standard described in *Campbell*.

The undersigned finds that declarations submitted by Plaintiffs, along with the detailed factual allegations in the complaint and other evidence provided by Plaintiffs, are sufficient to show that the proposed collectives of current and former Walmart employees are "alike with regard to some *material* aspect of their litigation" and "in ways that matter to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1114 (emphasis in original).

Plaintiffs provide declarations from the Plaintiffs who are either named in this litigation or who have opted-in to the action. Each declaration provides that, while serving as an hourly employee at Walmart, the Plaintiff was required to complete a COVID-19 screening but was not compensated by Walmart for the time spent working off-the-clock as a result of the screening. (*See* Haro. Decl. ¶¶ 3, 7, 9–10; Ortega Decl. ¶¶ 3, 7–8, 10–11; Hernandez Decl. ¶¶ 3–14; Lewis Decl. ¶¶ 3–14; Sanchez Decl. ¶¶ 3–14; Gibson Decl. ¶¶ 3–13; Gumataotao Decl. ¶¶ 3–15; Elias Decl. ¶¶ 3–13; West Decl. ¶¶ 3–13; Riley Decl. ¶¶ 3–13; Newman Decl. ¶¶ 3–13; McNaught Decl. ¶¶ 3–13.) Even though the members of the proposed collectives worked in different Walmart locations across the country and had different job titles and duties, Plaintiffs allege they were all subject to "identical and uniform written policies and procedures" in which Walmart unlawfully required its non-exempt employees to submit to COVID-19 screening procedures prior to clocking in for their shifts. (Doc. 41-1 at 7.) Accordingly, Plaintiffs have satisfied their "'light'" burden of demonstrating that conditional certification is appropriate. *See, e.g., Campbell*, 903 F.3d at 1116 (if supported by an adequate record, plaintiffs' allegations that the police department had a tacit policy of discouraging reporting of earned overtime would have been sufficient to show that they were "similarly situated"); *Pittmon v. CACI Int'l, Inc.*, No. CV 21-02044-CJC (JEMx), 2021 WL 4642022, at *3 (C.D. Cal. Aug. 27, 2021) (finding seven declarations indicating plaintiffs worked overtime hours without being paid, were subject to defendants' pre-approval overtime policy, and that approval for overtime was rarely given to be sufficient at the conditional certification stage); *Knight v. Concentrix Corp.*, No. 4:18-cv-07101-KAW, 2019 WL 3503052, at *3 (N.D. Cal. Aug. 1, 2019) (finding three declarations and allegations contained in the complaint indicating plaintiffs were required to arrive at their workstations and perform pre-shift work before clocking in to be sufficient at the conditional certification stage).

Despite the "'lenient'" standard for preliminary certification, Walmart contends Plaintiffs have not adequately shown that the members of the proposed collectives are "similarly situated." Walmart highlights several factual inconsistencies presented in the evidence, such as how the time employees spent waiting to be screened was sporadic and minimal, how the screening process differed across the various store locations and was extremely brief, and how the time between

screening and clocking in was not consistent, ranging from a few seconds to several minutes. (Doc. 59 at 10–13, 21–22, 29.)

As the Ninth Circuit articulated in *Campbell*, however, the scope of the Court's review during this first stage of conditional certification is loosely akin to a plausibility standard. *See Campbell*, 903 F.3d at 1109. "Significantly, as long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Senne*, 934 F.3d at 948 (citing *Campbell*, 903 F.3d at 1114). "Critical" to the undersigned's findings is that Plaintiffs—all non-exempt, hourly workers employed by Walmart—"allege a single, FLSA-violating policy" and "argue a common theory of [Walmart's] statutory violations"— the failure to compensate for time spent working off-the-clock as a result of mandatory COVID-19 screenings. *Senne*, 934 F.3d at 949. "These are 'similar issue[s] of law or fact material to the disposition of their FLSA claims,' thus making [P]laintiffs 'similarly situated.'" *Id.* (citing *Campbell*, 903 F.3d at 1117).

Walmart submits additional evidence, including numerous declarations from potential putative collective members that factually conflict with evidence from the named and opt-in plaintiffs, as discussed above. (Doc. 59 at 15; *see* Doc. 58-1.) This evidence, however, "is irrelevant at this juncture, because the Court does not resolve factual disputes at the notice stage." *Knight*, 2019 WL 3503052, at *3; *see, e.g., Droesch*, 2021 WL 1817058, at *3 ("To the extent that Defendant challenges [Plaintiffs'] declarations as boilerplate and insists that they are contradicted by deposition testimony or by other evidence, the Court declines to consider these arguments at this early stage."). "Courts rarely reject conditional certification during this first stage based on defendant's declarations." *Pittmon*, 2021 WL 4642022, at *4; *see also Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009) (in determining whether plaintiffs meet the "similarly situated" standard at the first stage of the certification process, "courts need not consider evidence provided by defendants"). While the undersigned may consider this evidence, "'[its] use at this stage is of limited value.'" *Droesch*, 2021 WL 1817058, at *3. "To require otherwise would permit a defendant employer to defeat certification before the plaintiffs were afforded an opportunity to engage in meaningful discovery to obtain the 'concrete evidence'

9

necessary to support their claims," *Knight*, 2019 WL 3503052, at *3, and "'contravene the lenient level of consideration required by *Campbell*,'" *Droesch*, 2021 WL 1817058, at *3. Accordingly, the undersigned finds that Plaintiffs have met their burden of showing that the members of the proposed collectives are "similarly situated" within the meaning of the FLSA.

### b. Scope of the Collectives

Although Plaintiffs have met their burden of showing that the former and current Walmart employees are "similarly situated," Walmart contends that the collective should be limited to California employees. (*See* Doc. 59 at 15–17.)

As noted above, Plaintiffs' burden at this step of the certification process is "'light'" and the Court's level of consideration is "'lenient.'" *Campbell*, 903 F.3d at 1109; *Droesch*, 2021 WL 1817058, at *3. At the notice stage, before the close of relevant discovery, Plaintiffs are not required "to submit declarations from plaintiffs in every single state to justify nationwide collective certification." *Pittmon*, 2021 WL 4642022, at *4. "[C]ourts have routinely certified classes encompassing employer locations that are not accounted for in declarations or other evidence provided to the Court at the certification stage." *Id*. Therefore, the undersigned finds that Plaintiffs have sufficiently shown that members of the proposed collective across the country are "similarly situated" for purposes of preliminary certification.

Walmart contends that conditional certification is not appropriate because a jury would have to determine how long each individual Plaintiff spent engaged in compensable time surrounding the COVID-19 screenings, and thus, Plaintiffs are not "similarly situated." (*See, e.g.,* Doc. 59 at 26–29). This argument is not persuasive. As the Ninth Circuit explained in *Senne*, "damages will inevitably be individualized, at least to some extent. But just as the need for individualized damage calculations is insufficient to defeat Rule 23 certification, '[i]ndividual damages amounts cannot defeat collective treatment under the more forgiving standard' for FLSA collective certification." *Senne*, 934 F.3d at 950 (citing *Campbell*, 903 F.3d at 1117). Ultimately, "[d]istrict courts are well-equipped to deal with issues of individualized calculations in the wage-and-hour context, and may use 'any of the practices developed to deal with Rule 23 classes facing similar issues.'" *Senne*, 934 F.3d at 950 (citing *Campbell*, 903 F.3d at 1116).

1    Plaintiffs contend nationwide collective treatment is proper, given that the case "involves modest, hourly wage earners who do not have the means to individually challenge Walmart's compensation policies." (Doc. 41-1 at 8.) As the Ninth Circuit provided in *Campbell*, the FLSA merely "requires similarity of the kind that 'allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Campbell*, 903 F.3d at 1114. "As is true in all FLSA cases, underlying our decision today is the background principle that 'because the FLSA is a remedial statute, it must be interpreted broadly.'" *Senne*, 934 F.3d at 950. Accordingly, the undersigned finds that nationwide certification of the proposed collective in this matter is appropriate under the Ninth Circuit's interpretation of the term "similarly situated," and is "consistent with 'the great public policy' embodied by the FLSA." *Id*.

Thus, the undersigned recommends preliminary certification of the California and nationwide collectives as proposed by Plaintiffs.

### 4. Notice to Potential Opt-In Plaintiffs

Lastly, Plaintiffs request that the Court approve of their notice plan, consisting of emails, text messages, posted notices at Walmart's retail stores and on a static website, as well as reminder emails and texts, and they include draft collective action notices. (Doc. 44 at 2–3.) Plaintiffs also ask that, given the large size of the potential collectives, the Court permit the hiring a neutral third-party administrator to oversee and handle distribution of the notices. (*Id*. at 3.) This administrator would create, administer, and operate the static website, which would contain the same proposed notice as well as other relevant, publicly available documents such as the complaint in this case and Plaintiffs' motion for conditional certification. (*Id*. at 6.)

Plaintiffs also request that the Court require Walmart to furnish contact information of opt-in plaintiffs to Plaintiffs' counsel within 21 days of Court's order granting conditional certification. (Doc. 44 at 7.) This contact information is comprised of (1) names of all potential opt-in plaintiffs; (2) their last-known mailing addresses "for purposes of confirming active cell phone numbers and running public records search[es] for personal email addresses;" (3) personal email addresses; (4) telephone numbers; and (5) dates of employment. (*Id*.) Plaintiffs also request that Walmart provide the last four digits of the potential collective members' social security numbers "so that the third-

11

party administrator may verify the email addresses and phone numbers to which notice would be sent." (*Id.*)  Finally, Plaintiffs request that the opt-in period consist of 120 days following the date on which notice is initially transmitted. (*Id.* at 9.)

Walmart acknowledges that notice should be sent to potential opt-in plaintiffs if a collective is certified, but raises numerous objections as to the content and procedure of Plaintiffs' proposed notice and plan.  Walmart contends the 120-day opt-in period suggested by Plaintiffs is excessive and a 90-day period would be sufficient.  (Doc. 61 at 8.)  Walmart also asserts notice by email (including reminder emails) and website are adequate, and the other methods of communication requested by Plaintiffs—text messages and posting at Walmart's retail locations—would be redundant and intrusive, implicate privacy concerns, and infringe on the Court's ability to convey judicial neutrality.  (*Id.* at 9–11.)

Walmart also objects to the production of the last four digits of the potential opt-in plaintiffs' social security numbers.  (Doc. 61 at 12–13.)  Walmart contends such a request is premature, given that Plaintiffs have not shown they will encounter difficulties providing notice through the other methods of distribution.  (*Id.*)  In the event it does not have a personal email address for a potential member of the collective, Walmart proposes distribution by first class mail.  (*Id.* at 11 n.5.)  Walmart does not object to the use of a third-party administrator at Plaintiffs' expense, and requests that the parties meet and confer to select a mutually agreeable administrator.  (*Id.* at 11–12.)  Finally, Walmart asserts that the notice and consent forms submitted by Plaintiffs must be modified because they are misleading and lack information that would properly inform potential opt-in plaintiffs regarding the lawsuit.  (*Id.* at 13–17.)

        a. <u>Legal Standard</u>

Once a collective action has been conditionally certified, potential FLSA collective members are entitled to "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions as to whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and

1  not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil
2  Procedure." *Id*.

3  Under section 216(b) of the FLSA, the Court has the authority and discretion at the notice
4  stage to monitor the preparation and distribution of the notice to "ensure that it is timely, accurate,
5  and informative." *Hoffman-La Roche Inc.*, 493 U.S. at 172. For example, the Court has discretion
6  "to direct a defendant employer to disclose the names and addresses of potential class members."
7  *Cowley v. Prudential Security, Inc.*, No. 1:19-cv-01472-NONE-JLT, 2021 WL 53084, at *5 (E.D.
8  Cal. Jan. 6, 2021). "In exercising the discretionary authority to oversee the notice-giving process,
9  courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to
10 avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche*
11 *Inc.*, 493 U.S. at 174; *see, e.g., Newell v. Ensign U.S. Drilling (Cal.) Inc.*, No. 1:19-cv-01314-
12 NONE-JLT, 2020 WL 2060399, at *9 (E.D. Cal. Apr. 29, 2020) (finding plaintiffs' draft collective
13 action notice "reasonable and adequate" where the proposed form was neutral in tone, apprised
14 putative collective members of the claims alleged, expressly denied endorsement from the court,
15 provided the steps potential plaintiffs must take to be included in the action, and provided contact
16 information for plaintiffs' counsel).

17 Courts routinely allow the production of employees' mail, email addresses, and telephone
18 numbers to ensure that notice is effectuated. *Forsyth v. HP Inc.*, No. 5:16-cv-04775-EJD, 2021
19 WL 1391501, at *7 (N.D. Cal. Apr. 13, 2021). "Courts have also granted unopposed requests by
20 plaintiffs that seek personal information such as birthdates or social security numbers." *Id.*; *see*
21 *also Droesch*, 2021 WL 1817058, at *4 ("requests for personal information such as dates of birth
22 are granted only where unopposed."). "It is in everyone's interest to ensure that the notices reach
23 the entire potential class to avoid having to revisit the issue at a later date." *Syed*, 2014 WL
24 6685966, at *8.

25 As for the opt-in period, several courts have found that 120 days is excessive, *see, e.g.,*
26 *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129 (N.D. Cal. 2009), whereas other courts
27 have approved of a 120-day response period. *See Syed*, 2014 WL 6685966, at *9. "In approving
28 longer periods of time, courts have accepted arguments that 'the potential class is transitory and

1   there is a high turnover rate, meaning that additional investigation may be required in order to
2   contact potential opt-in plaintiffs.'" *Id*. "Where such an explanation is given, granting an extended
3   . . . time period is reasonable." *Id*. In the absence of such "special circumstances, 'timeframes of
4   sixty to ninety days appear to have become the presumptive standard in [the Eastern] District.'" *Id*.

### b. Analysis

The undersigned recommends granting Walmart's request to meet and confer regarding the selection of an appropriate, mutually agreeable third-party administrator to oversee and handle the distribution of collective action notices in this case. *See Prentice v. Fund for Pub. Int. Res., Inc.*, No. C–06–7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) ("The Court agrees that using a third party is the best way to ensure the neutrality and integrity of the opt-in process."); *see e.g.*, *Forsyth*, 2021 WL 1391501, at *7. Given that both sides agree on the use a third-party administrator, the undersigned finds it equitable for the parties to split the costs.

Moreover, considering the principles described above, the undersigned recommends approval of Plaintiffs' proposed collective action notice plan (Doc. 44) with the following three exceptions. First, the relevant start date as presented in the notice must be modified to the agreed-upon date of April 10, 2020. Second, the undersigned finds that notice by text message and posted notices at Walmart's retail locations, as Plaintiffs propose, is not necessary under these circumstances. Given that Walmart does not object to notice by email (including reminder emails) and static website (*see* Doc. 61 at 11), the undersigned recommends that those two methods of distribution serve as means to effectuate notice in this case. In the event that the email addresses of potential opt-in plaintiffs are unable to be ascertained, the undersigned recommends the use of direct mail. Third, the undersigned finds that disclosure of personal information such as the last four digits of the opt-in plaintiffs' social security numbers is not needed in light of the furnishing of the other information and Walmart's opposition to doing so. *See Droesch*, 2021 WL 1817058, at *4; *see, e.g., Guilbaud v. Sprint/Mgmt. Co., Inc.*, No. 13–cv–04357–VC, 2014 WL 10676582, at *2 (N.D. Cal. Oct. 3, 2014) ("The plaintiffs have not adequately explained why telephone numbers or social security numbers would be necessary to provide notice to potential collective members, and the Court finds that the names, last known mailing addresses, and email addresses will be

sufficient."). Thus, the undersigned recommends that Walmart furnish the names, mailing addresses, and email addresses of putative collective members to the third-party administrator. *Forsyth*, 2021 WL 1391501, at *7.

## IV. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS as follows:

1. Plaintiffs' motion to strike declarations submitted by Walmart (Doc. 70) be DENIED;
2. Plaintiffs' motion for certification of FLSA collective action (Doc. 41) be GRANTED; and
3. Plaintiffs' proposed notice plan (Doc. 44) be APPROVED IN PART, as more fully set forth in these findings and recommendations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). **Within twenty-one (21) days after being served with these Findings and Recommendation**, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 24, 2023**                    /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE