1

2

3                          UNITED STATES DISTRICT COURT

4                     FOR THE EASTERN DISTRICT OF CALIFORNIA

5

6    AMADO HARO and ROCHELLE                No.  1:21-cv-00239-NODJ-SKO
     ORTEGA, On Behalf of Themselves and
7    All Others Similarly Situated,         **ORDER GRANTING**
                                            **UNOPPOSED MOTION FOR**
8                      Plaintiff,           **PRELIMINARY APPROVAL OF**
                                            **CLASS ACTION SETTLEMENT**
9         v.                                **AND CONDITIONAL**
                                            **CERTIFICATION OF**
10   WALMART, INC.,                         **SETTLEMENT CLASS**

11                     Defendant.           (Doc. 127)

12

13

14

15        This matter is before the Court on the unopposed motion for preliminary approval of a

16   class action settlement filed on December 15, 2023, by Plaintiffs Amado Haro and Rochelle

17   Ortego ("Plaintiffs") (Doc. 127).[1]  For the reasons set forth below, the Court grants preliminary

     approval of the proposed class action settlement.[2]

18

19

20                            I.       **BACKGROUND**

     **A.    Factual Background**

21        In 2020, Defendant Walmart, Inc. ("Walmart") implemented a company-wide policy

22   requiring all hourly paid employees to pass a COVID-19 health screening (the "screening")

23   before clocking in for a shift.  (Doc. 127 at 6)  The policy applied in every Walmart store in

24   California, and if employees refused the screening, they were sent home on Level 1 unpaid leave.

25

26   _____
     [1] Under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, "[n]ot later than 10 days after a proposed
     settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve
27   upon the appropriate State official of each State in which a class member resides and the appropriate Federal official,
     a notice of the proposed settlement[.]"  Defendant indicates it intended to file the notice by December 26, 2023.
     (Doc. 127 at 20-21).
28   [2] On January 4, 2024, the parties consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Docs. 129-131).

                                           1

1  (*Id.*).  The policy required all hourly employees to "(1) report to a designated location at a

2  Walmart store, (2) possibly wait in line standing six feet apart from other employees, (3) answer

3  the same questions about whether they had any signs or symptoms of the Coronavirus, (4) have

4  their temperature taken, (5) wear a Walmart approved mask, and (6) pass the health examination

5  before clocking-in for the day."  (Doc. 127 at 7).  Walmart expected employees to clock in as

6  normal after completing the screening.  (*Id.*).  Time clocks were located at varying distances from

7  the screening area, with some sitting "hundreds of feet away."  (Doc. 127 at 7 (citing Doc. 42)).

8  Walmart paid employees an additional five minutes per shift to compensate for the time spent

9  waiting in line and undergoing the screening.

10       In this lawsuit, Plaintiff contends that five minutes' worth of pay was insufficient to

11  compensate employees for time spent on the screening process because it did not account for the

12  time spent walking from the testing area to the time clocks.  (Doc. 127 at 7).  Walmart counters

13  that this time was not compensable, or if it was, the five minutes Walmart automatically paid was

14  sufficient, and any employee could have reported the additional time to Walmart and received

15  payment.  (Doc. 127 at 7).

16  **B.     Procedural Background**

17       Plaintiffs filed this lawsuit on behalf of themselves and a class of similarly situated

18  consumers, alleging a (1) failure to pay all wages, (2) failure to pay overtime, (3) failure to

19  provide itemized wage statements, and a (4) failure to provide wages upon separation of

20  employment, all in violation of the California Labor Code, as well as unfair competition under the

21  California Business and Professions Code.  (Doc. 1).  Plaintiffs filed this lawsuit as a collective

22  action under the Fair Labor Standards Act (29 U.S.C. § 201) and as a Rule 23 class action under

23  the California Labor Code.  (*Id.*).  In the related case *Haro v. Walmart Inc.,* Alameda County

24  Super. Ct. Case No. 22cv008823 (the "State Court Action"), Haro seeks civil penalties under the

25  Private Attorneys General Act ("PAGA") based on the same alleged violations on behalf of all

26  nonexempt employees who went through at least one COVID-19 screening in California since

27  January 17, 2021.  (Doc. 127-1 at 2-3).

28

2

The parties engaged in a substantive discovery process, including 31 depositions, six expert reports, and thousands of pages of traditional and electronic discovery. (Doc. 127 at 8 (citing Doc. 127-2 at 5). Walmart filed a motion for summary judgment on August 2, 2022. (Doc. 31.) Plaintiffs filed a response (Doc. 36), and a motion to continue the motion for summary judgment (Doc. 34). On August 15, 2022, Plaintiffs filed a motion to certify a class under Rule 23 (Doc. 43) and a motion for conditional certification under the Fair Labor Standards Act (Doc. 41). Defendant opposed both motions (Docs. 58, 59). This Court granted conditional certification of the FLSA collective on February 27, 2023. (Doc. 90). Defendant filed objections which remain pending under this Court's order (Doc. 117) staying the case pending the parties' mediation.

Plaintiffs' counsel also moved to be appointed interim class counsel. (Doc. 72). The Court issued findings and recommendations (Doc. 91) that Plaintiffs' motion be granted. Defendant moved to strike the expert declaration of Dr. Drogin (Doc. 60), and Plaintiffs moved to strike the expert declarations of Dr. Woods (Doc. 99) and the declarations submitted by Defendant in opposition to Plaintiffs' motion for class certification (Doc. 109).

The parties attended a full-day mediation led by mediator Antonio Piazza on September 11, 2023. (Doc. 127 at 9). The process culminated in Mr. Piazza creating a mediator's proposal, which both sides accepted. (*Id.*).

## II.   THE PROPOSED SETTLEMENT

### A.   Settlement Fund

The parties have agreed to a Gross Settlement Amount totaling $5,200,000, to be paid according to the terms of the Settlement Agreement. (Doc. 127-1 at 4-5). This amount includes (1) all individual settlement payments to participating class members, (2) PAGA penalties, (3) general release payments, (4) attorneys' fees and costs to class counsel and (5) settlement administration costs to the settlement administrator. (Doc. 127-1 at 4-5). No part of the Gross Settlement Amount will revert to the Defendant. (Doc. 127-1 at 4-5). The parties propose $50,000 will be paid to settle all individual and representative claims brought under PAGA.

(Doc. 127-1 at 14).  Pursuant to PAGA, 75% of this amount (totaling $37,500) will be paid to the Labor and Workforce Development Agency and 25% (totaling $12,500) will remain in the Settlement Fund.  (Doc. 127-1 at 14).  The Settlement Administrator will be paid for the reasonable costs of administering the Settlement Agreement, which is not to exceed $432,522, and these funds will be deducted from the Settlement Fund.  (Doc. 127-1 at 14).

**B.     The Class and Settlement Period**

For settlement purposes, there are three types of class members: (1) the California Class Members, (2) the FLSA Class Members, and (3) the Dual Class Members, who are a member of both the California Class and the FLSA Class.[3]  (*See* Doc. 127-1 at 12-13).  Collectively, these are the "Class Members."  The California Class Members are all individuals who worked at a Walmart retail store in California as a nonexempt store employee at any point between April 10, 2020, and February 6, 2023, who do not submit a valid Request for Exclusion from the California Class.  (*Id.*).  The FLSA Class Members are any Class Members who submit an FLSA opt-in form by the Response Deadline[4] and every Class Member who previously submitted an opt-in form and who does not submit a valid Request for Exclusion from the FLSA Class.  (*Id.*).  The FLSA Class does not include any employee who worked solely outside of California who did not previously opt-in to the FLSA Class.  (Doc. 127-1 at 5-6).

To determine each Class Member's individual settlement amount, the Settlement Administrator will aggregate the number of Pay Period Units for each Class Member and the total number of Pay Period Units for all Class Members.  Pay Period Units are assigned as follows: (1) California Class Members will be assigned 0.75 Pay Period Units for each pay period, (2) FLSA Class Members will be assigned 0.50 Pay Period Units for each pay period, and (3) Dual Class

---

[3] In Plaintiffs' Motion for Class Certification under Rule 23 (Doc. 43), Plaintiffs define the class as "all hourly paid employees of Walmart who worked in a Walmart retail store in California at any time since April 10, 2020." Proposed subclasses include (1) the April 10 Class (all hourly Walmart employees who worked in a California Walmart retail store on April 10, 2020); (2) April 11 Class (all hourly Walmart employees who worked in a California Walmart retail store since April 11, 2020; (3) the Wage Statement Class (all hourly Walmart employees who worked in a California Walmart retail store at any time from April 10, 2020, to the present and received at least one wage statement from Walmart; and (4) the Final Paycheck Class (all hourly Walmart Employees who worked in a California Walmart retail store at any time from April 10, 2020, to the present and are no longer employed by Walmart).  (Doc. 43 at 2).

[4] The Response Deadline is sixty days from the initial mailing of the Notice of Class Action Settlement by the Settlement Administrator.  (Doc. 127-1 at 6).

Members will be assigned 1.00 Pay Period Units for each pay period.  (Doc. 127-1 at 12-13).  The Settlement Administrator will use the following formula:

> The Net Settlement Amount will be divided by the aggregate total number of pay Period Units, resulting in the "Pay Period Unit Value."  Each Participating Class Member's "Individual Settlement Payment" will be calculated by: multiplying the Pay Period Unit Value by the Participating Class Member's total number of Pay Period Units.  The Individual Settlement Payments will be reduced by appropriate tax withholdings or deductions.  The Parties agree that the formula described herein is reasonable and that the payments are designed to provide a fair settlement to each Participating Class Member in light of the uncertainties regarding the compensation alleged to be owed and the calculation of such amounts.  In particular, the Parties agree that assigning a greater Pay Period Unit value to the Released Class claims than the Released FLSA Claims is fair and reasonable, because the Released Class claims seek recovery that is not available under the FLSA (e.g., statutory penalties).

(Doc. 127-1 at 13).

To distribute settlements, Defendants will provide a class list (a complete list of all Class Members) to the Settlement Administrator within 30 days of preliminary approval.  (Doc. 127-1 at 16).  Defendant agrees to pay its share of the applicable payroll taxes in addition to the Gross Settlement Amount.  (Doc. 127-2 at 6).  The settlement also allows for the two named Plaintiffs to apply to the Court for an "enhancement award" of $10,000 each to compensate for their time, expense, and risks incurred with litigation the action on behalf of the Class Members.  (Doc. 127-1 at 14).

## C.     Attorney's Fees

The Settlement Agreement provides for class counsel to seek an award of attorneys' fees and costs of 33.33% of the Gross Settlement Amount, or $1,733,160, plus reasonable litigation costs not to exceed $261,751.87.  (Doc. 127-1 at 13).  These fees will be paid from the Gross Settlement Amount.

## D.     The Release of Claims

The Settlement Agreement defines the Released Parties as "Walmart Inc., Wal-Mart Associates, Inc., and all of their present and former parents, subsidiaries, affiliates, and joint ventures, and all of their shareholders, members, managers, officers, officials, directors, employees, agents, servants, registered representatives, attorneys, insurers, successor, and assigns,

5

and any other persons acting by, though, or under or in concert with any of them." (Doc. 127-1 at 6). The Settlement Agreement releases these parties from three types of claims: (1) the Class Claims, the (2) FLSA Claims and (3) the PAGA claims. (Doc. 127 at 9-10). The Class Claims are defined as any and all claims based on facts that "(i) were asserted in this Action under California law on behalf of the California Class, including in the Complaint filed on February 23, 2021, or (ii) arising from, reasonably related to, or derivative of, the factual allegations asserted in this Action regarding Walmart's alleged failure to pay minimum and overtime wages, provide accurate wage statements, or timely pay final wages in violation of California Labor Code §§ 201, 202, 203, 204, 226, 510, 558, 1194, 1194.2, 1197, 1197.1, or 1198." (Doc. 127-1 at 9). The FLSA Claims include "any and all claims (i) asserted in this Action under the FLSA on behalf of the FLSA Class, including in the complaint filed on February 23, 2021, or (ii) arising from, or derivative of, the claims or factual allegations asserted in this Action regarding Walmart's alleged failure to pay minimum and overtime wages under the FLSA." (Doc. 127-1 at 9-10). The PAGA claims include "any and all actual or potential claims, rights or causes of actions for civil penalties (and for all resulting penalties, attorneys' fees, litigation costs, interest and any other relief) under California Labor Code Sections 2698 *et.seq.*, (i) asserted in this Action or the State Court Action or (ii) arising from, reasonably related to, or derivative of, the claims or faction allegations asserted in this Action or the State Court Action regarding Walmart's alleged failure to: pay minimum and overtime wages, provide accurate wage statements, or timely pay final wages in violation of California Labor Code §§ 201, 202, 203, 204, 226, 510, 558, 1194, 1194.2, 1197, 1197.1, or 1198." (Doc. 127-1 at 10).

The Settlement Agreement also provides for General Release Payments. Plaintiffs will apply to the Court for these General Release payments of not more than $10,000 for each Plaintiff as consideration for the release of any additional claims. (Doc. 127-1 at 14). These payments will be paid from the Gross Settlement Amount in addition to Plaintiffs' rights to individual Settlement Payments. (*Id.*).

**E.    Notice**

The proposed notice plan provides for direct, individual notice to Class Members by email

6

and regular mail.  (Doc. 127-1 at 16).  The plan proposes that the Settlement Administrator email a Notice of Class Action and FLSA Settlement to all Class Members for whom a personal email address is identified, and if no email address is identified, the Settlement Administrator will mail a notice to the remaining Class Members via U.S. mail.  (Doc. 127-1 at 16).  The purpose of seeking to notify class members via email is to "reduc[e] Administrative Costs and preserve settlement funds for Participating Class Members."  (Doc. 127-1 at 16).  The notice will include the following:

> information regarding the nature of the substance of the Settlement, including Walmart's denial of liability; the Class Member's dates of employment and total number of Pay Periods; the aggregate number of Pay Periods worked by all Class Members during the Class Period; the formula for calculating the Class Member's Individual Settlement Payment; the estimated ranges for the Class Member's Individual Settlement Payment if the Class Member (i) does and (ii) does not opt into the FLSA Class (based on the range of possible opt-in rates to the FLSA Class); an FLSA Opt-In Form (for notice by U.S. Mail) or a link to an FLSA Opt-In Form (for notice by email); the procedure and time period for objecting to the Settlement and participating in the Final Approval hearing; a statement that the Court has preliminarily approved the Settlement; a statement that California Putative Class Members will release the Released Class Claims unless they opt out of the California Class; a statement that Prior FLSA Opt-Ins will release the Released FLSA Claims unless they opt out of the FLSA Class; and information regarding the opt-out procedure.

(Doc. 127-1 at 17).  The Settlement Administrator will also provide notice of this Settlement to the Office of the Attorneys General of the United States and of all states where Class Members currently reside.  (Doc. 127-1 at 17).

**F.     Objections/Exclusions**

The proposed plan requires Class Members who wish to be excluded from the settlement submit a Request for Exclusion to the Settlement Administrator on or before the Response Deadline.  (Doc. 127-1 at 6).

### III.     LEGAL STANDARD

**A.     Rule 23 Settlements**

Class actions require the approval of the district court before settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

7

1  purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the

2  court's approval."). "Approval under 23(e) involves a two-step process in which the Court first

3  determines whether a proposed class action settlement deserves preliminary approval and then,

4  after notice is given to class members, whether final approval is warranted." *Nat'l Rural*

5  *Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

6       The first step in the two-step process is preliminary approval. During preliminary

7  approval, the court conducts a preliminary fairness evaluation to determine if notice of the class

8  action settlement should issue to class members and, if applicable, whether the proposed

9  settlement class should be certified. *See* David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th

10  ed.). Under Rule 23(e)(1), the court must direct notice to all class members who would be bound

11  by the settlement proposal if the parties show that "the court will likely be able to:" (i) approve

12  the proposal under Rule 23(e)(2)'s fair, reasonable, and adequate standard; and (ii) certify the

13  proposed settlement class. Fed. R. Civ. P. 23(e)(1); *see also Lounibos v. Keypoint Gov't Sols.*

14  *Inc*., No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re*

15  *Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) (noting that federal

16  courts generally grant preliminary approval if "the proposed settlement appears to be the product

17  of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

18  grant preferential treatment to class representatives or segments of the class, and falls within the

19  range of possible approval").

20       The second step is the final approval. During final approval, "[i]f the proposal would bind

21  class members, the court may approve it only after a hearing and only on finding that it is fair,

22  reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the court must consider several

23  factors, including whether: "the class representatives and class counsel have adequately

24  represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class

25  members equitably relative to each other"; and "the relief provided for the class is adequate." *Id*.

26  When considering whether "the relief provided for the class is adequate," the court should also

27  take into account:

     (i)    the costs, risks, and delay of trial and appeal;

28

8

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3).

*Id*.   In addition to the two-step review process, Rule 23(e) also requires that: (i) the parties seeking approval file a statement identifying the settlement agreement; (ii) class members be given an opportunity to object; and (iii) no payment be made in connection with forgoing or withdrawing an objection, or forgoing, dismissing, or abandoning an appeal.   Fed. R. Civ. P. 23(e)(3), (5).

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."   *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted).   To protect the rights of absent class members, Rule 23(e) requires that the court approve such settlements "only after a fairness hearing and a determination that the settlement is fair, reasonable, and adequate."   *Id*. at 946.   When approval is sought of a settlement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement."   *Id*. In such circumstances, the "settlement approval requires a higher standard of fairness" and a "more exacting review" so as "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent."   *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 23 also "demand[s] undiluted, even heightened, attention" to the certification requirements when class certification is sought only for purposes of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   Accordingly, the district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing.   *See, e.g., Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014).

1

IV.     ANALYSIS

2

**A.     Preliminary Class Certification**

3

The approval of a settlement is a multi-step process.  At the preliminary approval stage,

4

the court should grant such approval only if it is justified by the parties' showing that the court

5

will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2)

6

"approve the proposal under Rule 23(e)(2)."  Fed. R. Civ P. 23(e)(B).  If the court preliminarily

7

certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation,"

8

then the class will be notified, and a final fairness hearing scheduled to determine if the settlement

9

is fair, adequate, and reasonable pursuant to Rule 23.  *Villegas v. J.P. Morgan Chase & Co*., No.

10

CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).  *See* Fed. R. Civ.

11

P. 23(e)(2), (3), (5).

12

1.     Rule 23(a) Requirements

13

The class action is a procedural mechanism whereby the "usual rule that litigation be

14

conducted by and on behalf of the named parties only" is swept aside so that multiple parties—

15

unwieldy in number but possessing similar or identical claims—may pursue common redress in

16

an efficient and economical manner.  *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (citation

17

omitted). Here, the parties seek preliminary certification of the proposed class under Federal Rule

18

of Civil Procedure 23, which controls class certification and imposes a two-step process in

19

deciding whether a class may be certified.[5]

20

Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites:

21

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  *See Lozano v. AT&T Wireless*

22

*Services, Inc*., 504 F.3d 718, 730 (9th Cir. 2007).  Only if, a putative class satisfies these four

23

requirements may it then proceed to show it also satisfies the requirements of Rule 23(b).  The

24

party seeking class certification bears the burden of establishing conformity with these two rules

25

and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted.

26

*Comcast*, 569 U.S. at 33.  Only after conducting a "rigorous analysis" of these facts and

27

28

---

[5] The undersigned previously recommended Plaintiffs' Motion for Conditional Certification of FLSA Collective Action be granted (Doc. 90), and so the Court will not revisit its analysis in this regard because the parties' proposed settlement class is identical to the classes that were previously certified (*compare* Doc. 44 *with* Doc. 127).

1    determining they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a

2    district court certify a class.  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011)

3    (citation omitted); *see also Patel v. Nike Retail Servs., Inc*., Case No. 14-cv-4781-RS, 2016 WL

4    1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a)

5    and Rule 23(b).").

6                     *a.      Numerosity*

7         A proposed class must be "so numerous that joinder of all members is impracticable."

8    Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts

9    of each case and imposes no absolute limitations."  *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S.

10   318, 330 (1980). Although courts have found that a class of 40 individuals is sufficient

11   under Rule 23, this metric is not a bright line requirement.  *Rannis v. Recchia*, 380 Fed. App'x.

12   646, 651 (9th Cir. 2010) ("The numerosity requirement is not tied to any fixed numerical

13   threshold . . . . In general, courts find the numerosity requirement satisfied when a class includes

14   at least 40 members.").  Courts have found the numerosity requirement satisfied when the class is

15   comprised of as few as thirty-nine members or where joining all class members would serve only

16   to impose financial burdens and clog the court's docket.  *See Murillo v. Pac. Gas & Elec. Co.*,

17   266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit thresholds for

18   numerosity and listing cases).  Plaintiffs estimate there are approximately 183,750 Class

19   Members.  (Doc. 43 at 24 (citing Doc. 42-46 at 3)).  This showing is adequate to meet the

20   requirements of Rule 23(a)(1).

21                     *b.      Commonality*

22        Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P.

23   23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate

24   that common points of facts and law will drive or resolve the litigation.  *See Wal-Mart Stores,*

25   *Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[C]ommonality requires that the class members' claims

26   depend upon a common contention such that determination of its truth or falsity will resolve an

27   issue that is central to the validity of each claim in one stroke," and the "plaintiff must

28   demonstrate the capacity of classwide proceedings to generate common answers to common

11

questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350).  For example, "[c]ommonality is generally satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Benitez v. W. Milling*, LLC, No. 1:18-cv-01484-SKO, 2020 WL 309200, at *5 (E.D. Cal. Jan. 21, 2020) (internal quotation marks and citations omitted).

The rule does not require all questions of law or fact to be common to every single class member and "[d]issimilarities among class members do not [necessarily] impede the generation of common answers to those questions[.]" *Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014). However, raising any common question does not suffice.  *See Wal-Mart*, 564 U.S. at 349 ("Any competently crafted class complaint literally raises common 'questions.'") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–32 (2009)).

Plaintiffs satisfy the commonality requirement in several respects.  First, Plaintiffs' claims are all premised on the implications of Walmart's screening policy, and common questions related to the application of a uniform policy generally satisfy Rule 23(a)(2).  *Pryor v. Aerotek Scientific*, LLC, 278 F.R.D. 516, 525 (C.D. Cal. 2011) ("[T]he fact that an employee challenges a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation."); *see also Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 205 (N.D. Cal. 2009) (finding commonality where plaintiff proffered evidence of a company-wide policy regarding donning and waiting time).  While the Plaintiffs may have spent varying amounts of time of the clock, commonality may be found through "[t]he existence of shared legal issues with divergent factual predicates."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  As Plaintiffs note, the Plaintiffs' claims will all hinge on common questions of law, such as (1) whether Walmart's policy to perform the screenings off-the-clock violated California Labor Code §§ 204, 1194, 1197; (2) whether Walmart's policy to classify the time spent walking to the time clocks after completing the screening as non-compensable time violated California Labor Code §§ 204, 1194, 1197, and (3) whether the format and information on Walmart's wage

12

1    statements violated California Labor Code § 226(a).   This showing is adequate to meet the

2    requirements of Rule 23(a)(1).

3                    *c.    Typicality*

4         "The typicality requirement looks to whether the claims of the class representatives are

5    typical of those of the class and is satisfied when each class member's claim arises from the same

6    course of events, and each class member makes similar legal arguments to prove the defendant's

7    liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations and internal

8    quotation marks omitted); Fed. R. Civ. P. 23(a)(3).   While representative claims must be

9    "reasonably co-extensive with those of absent class members," they "need not be substantially

10   identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

11   (9th Cir. 1992).

12        Here, Plaintiffs state that they and all other Class Members were "(1) hourly paid

13   employees of Walmart (non-exempt), (2) who were required to report a designated location at

14   Walmart stores to complete the screenings, (3) were subject to the same screening policies and

15   procedures, (4) performed the screening off-the-clock pursuant to Walmart's policy, (5) were

16   required to clock-in on time on Walmart's premises after completing the screening, and (6) are

17   alleging that they were not paid for all of the time spent working off-the-clock as a result of the

18   screening," (Doc. 43 at 25-26).  Plaintiff Ortega worked on April 10, 2020, and was not paid for

19   the time spent screening that day like all other Class Members who worked that day.   (*Id.*).

20   Plaintiff Ortega's employment with Walmart has ended and like other Class Members, she has

21   not received her unpaid wages from Walmart as required under the California Labor Code.  (*Id.*).

22   Both named Plaintiffs received the same wage statements other Class Members received that

23   Plaintiffs claim were deficient.  (*Id.*).   The Court finds that Plaintiffs' claims are "reasonably co-

24   extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality is therefore

25   satisfied here.

26                    *d.    Adequacy of Representation*

27        The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and

28   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   Resolution of this issue

requires the court to address the following questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018); *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008). "Adequacy of representation also depends on the qualifications of counsel." *Sali*, 909 F.3d at 1007 (citation omitted).

Plaintiffs contends that the adequacy of representation requirement is met here because there is no evidence of any conflict of interest and both Plaintiffs have fully participated in discovery, provided answers to interrogatories and responses to requests for productions, and they appeared for depositions. (Doc. 42 at 26 (citing *Sepulveda v. Wal–Mart Stores, Inc.,* 237 F.R.D. 229, 244 (C.D. Cal. 2006) (participation in discovery supports a finding of adequacy)). Based on these assertions, the Court concludes that Plaintiffs' interests align with those of the proposed Class Members and that Plaintiff would vigorously prosecute the action on behalf of the class.

Plaintiffs' counsel also submitted a declaration to establish their adequacy as class counsel. (Docs. 42-1, 42-2, 42-3). Plaintiffs' counsels' declaration establishes that the attorneys working on this matter have significant experience in similar litigation. (See *id.*) Because Plaintiff and class counsel represent that there are no conflicts of interest with the Class Members and attorneys at Hodges & Foty, LLP, Don J. Foty, David W. Hodges, and William Hogg, appear to be experienced in class action litigation, the Court finds that the adequacy of representation requirement has been preliminarily satisfied.

2.    Rule 23(b)(3) Requirements

The parties seek class certification under Rule 23(b)(3), which requires that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem*, 521 U.S. at 615; *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). The test of Rule 23(b)(3) is "far more demanding" than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

1

*a.     Predominance*

2        First, common questions must "predominate" over any individual questions.  While this

3   requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is higher at this

4   stage of analysis.  *Wal-Mart*, 564 U.S. at 359.  While Rule 23(a)(2) can be satisfied by even a

5   single question, Rule 23(b)(3) requires convincing proof that common questions "predominate"

6   over individual questions.  *Amchem*, 521 U.S. at 623–24.  "An individual question is one where

7   'members of a proposed class will need to present evidence that varies from member to member,'

8   while a common question is one where 'the same evidence will suffice for each member to make

9   a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson*

10  *Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting W. Rubenstein, *Newberg on Class*

11  *Actions* § 4:50, pp. 196–197 (5th ed. 2012)).  "When common questions present a significant

12  aspect of the case and can be resolved for all members of the class in a single adjudication, there

13  is clear justification for handling the dispute on a representative rather than on an individual

14  basis."  *Hanlon*, 150 F.3d at 1022.

15       As discussed above, Plaintiffs challenge Walmart's screening policy, claiming it

16  amounted to uncompensated labor in violation of California law.  (Doc. 18-1 at 18).  Class actions

17  in which a defendant's uniform policies are challenged generally satisfy the predominance

18  requirement of Rule 23(b)(3).  *See, e.g., Castro*, 2020 WL 1984240, at *6; *Palacios v. Penny*

19  *Newman Grain, Inc.*, No. 1:14-cv-01804-KJM-SAB, 2015 WL 4078135, at *5–6 (E.D. Cal. July

20  6, 2015); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. 10-cv-03873-JLS-

21  RZ, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011).  The Court therefore concludes that the

22  predominance requirement has been met in this case.

23

*b.     Superiority*

24       Rule 23(b)(3) also requires that a court find that "a class action is superior to other

25  available methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  To

26  resolve the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests

27  in pursuing separate actions individually, any litigation already in progress involving the same

28  controversy, the desirability of concentrating in one forum, and potential difficulties in managing

15

1    the class action—although the last two considerations are not relevant in the settlement context."

2    *See Palacios*, 2015 WL 4078135, at \*6 (citing *Schiller v. David's Bridal Inc.*, No. 10-cv-00616-

3    AWI-SKO, 2012 WL 2117001, at \*10 (E.D. Cal. June 11, 2012)).

4         Here, Plaintiff asserts that the superiority requirement is satisfied because "[t]he class

5    action procedure was specifically designed for cases just like the present case where there are a

6    large number of Class Members (nearly 200,000) with very modest individual claims."  (Doc. 43

7    at 35).   Plaintiffs provide that "[g]iven the small size of each class member's claim, class

8    treatment is not merely superior, but the only manner in which to ensure fair and efficient

9    adjudication of the present action."  (Doc. 43 at 35 (quoting *Bruno v. Quten Research Inst., LLC*,

10   280 F.R.D. 524, 537 (C.D. Cal. 2011)).

11        Given that "[a] common nucleus of facts and potential legal remedies" predominate, the

12   Court finds that these questions can be resolved for all members more efficiently and

13   expeditiously in a single action.  *Hanlon*, 150 F.3d at 1022.  The Court also finds that class

14   resolution is superior to other available methods for adjudication of the controversy as each

15   member's individual pursuit of the same claims would burden the judiciary.  *See Carlino*, 2019

16   WL 1005070, at \*5.  Therefore, the Court is satisfied that the superiority requirement has been

17   met here.

18        For the forgoing reasons, the requirements for preliminary certification under Rule 23

19   have been satisfied, and the Court finds that conditional certification of the class is appropriate.

20   **B.    Preliminary Settlement Approval**

21        In determining whether a class action settlement agreement is fair, adequate, and

22   reasonable to all concerned, courts generally consider the following factors:

23       (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
         duration of further litigation; (3) the risk of maintaining class action status
24       throughout the trial; (4) the amount offered in settlement; (5) the extent of
         discovery completed and the stage of the proceedings; (6) the experience and
25       views of counsel; (7) the presence of a governmental participant; and (8) the
         reaction of the class members of the proposed settlement.
26

27   *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill*

28   *Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  Whether a settlement agreement has

been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *Bluetooth* red-flag factors to post-class certification settlement approvals). The *Bluetooth* court identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Bluetooth*, 654 F.3d at 947 (internal quotation marks and citations omitted).

The Court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

      1.   <u>Fairness Factors</u>

           *a.*     *Settlement Process*

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in

1    sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the

2    settlement." *Acosta*, 243 F.R.D. at 396.  Courts thus have "an obligation to evaluate the scope

3    and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an

4    agreement." *Id.*

5        The parties in this case attended mediation after significant discovery and motion practice.

6    The mediation occurred after the parties briefed issues on class certification, conditional

7    certification, and expert challenges.  (*See* Docket).  (*Id.* at 26).  Parties then attended an all-day

8    mediation session with a private mediator experienced in class action matters.  These negotiations

9    were seemingly informed by knowledge gleaned through discovery.  (Doc. 127 at 13).  When the

10   parties could not reach an agreement, Mr. Piazza made a mediator's proposal, which the parties

11   have accepted and weighs in favor of preliminary approval.  *In re Zynga Inc. Securities*

12   *Litigation*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use

13   of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was

14   appropriately informed in negotiating a settlement.'") (quoting *Villegas v. J.P. Morgan Chase &*

15   *Co.*, No. CV 09-00261 SBA, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).  In view of the

16   foregoing, the Settlement Agreement appears to be the product of serious, informed, non-

17   collusive negotiations.  This factor thus weighs in favor of preliminary approval.

18                    *b.    Obvious Deficiencies*

19       The Court must next consider "whether there are obvious deficiencies in the Settlement

20   Agreement."  *See Harris*, 2011 WL 1627973, at *8.  The Court finds no obvious deficiencies on

21   the face of the Settlement Agreement that would preclude preliminary approval.

22                    *c.    Lack of Preferential Treatment*

23       The Court must next examine whether the Settlement Agreement "provides preferential

24   treatment to any class member."  *See Villegas*, 2012 WL 5878390, at *7.  Under the Agreement,

25   all Class Members are treated equitably.  Class Members' awards will be based on the number of

26   pay periods they worked during the relevant time using actual data from Defendant.  (Doc. 127-1

27   at 13).

28

The Settlement Agreement also provides for a "Service Award" of up to $10,000 for the named Plaintiffs.  (Doc. 127 at 15).  "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one").  Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id*. at 958–59.  Although service awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted).

Plaintiffs maintain that a possible $10,000 "enhancement award" award is appropriate "to compensate the Plaintiffs for the time, expense, and risks they incurred in litigating this action on behalf of the Class Members."  (Doc. 127-2 at 7).  The Court will defer ruling on the propriety of the amount of the requested settlement and service award until final approval.[6]  However, at this

---

[6] Here, the proposed $10,000 may be appropriate under the circumstances of the case.  The total enhancement awards represent 0.38% of the total settlement fund.  District courts have declined to approve service awards that represent an unreasonably high proportion of the overall settlement amount or are disproportionate relative to the recovery of other class members, but those awards typically constituted a higher percentage of the total settlement fund than seen here.  *See Ontiveros v. Zamora*, 303 F.R.D. 356, 365–66 (E.D. Cal. 2014) (finding an incentive award of $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and reducing the award to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative); *see also Ko v. Natura Pet Prods., Inc*., No. C 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund, was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp*., No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action).  In reducing the award, courts have noted that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives.  *See Staton v. Boeing Co*., 327 F.3d 938, 977–78 (9th Cir. 2003); *see also Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1165 (9th Cir. 2013).

It is unclear, however, how this award will compare to the awards of other Class Members, whose settlements will be based on their number of relevant pay periods.  The Ninth Circuit Court of Appeals has approved incentive awards that were up to 417 times larger than the individual awards of other Class Members when the incentive award made

stage, there is no indication that a service award of "up to" $10,000 constitutes preferential treatment such that it would defeat preliminary approval. *Vigil v. Hyatt Corporation*, No 22-cv-00693-HSG, 2023 WL 662918, at *6 (N.D. Cal Oct. 10, 2023) (noting that a $10,000 incentive award is not "per se" unreasonable at the preliminary approval stage); *see also In re Ring LLC,* No. CV 19-10899-MWF (RAOx), 2023 WL 9687346 (C.D. Cal. Dec. 20, 2023) (noting incentive awards typically range from $2,000 and $10,000) (citing *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases)).

> ### d.     Range of Possible Approval

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider the plaintiff's "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

The Settlement Agreement provides that Class Members will receive a payment based on the number of pay periods worked during the relevant time. Plaintiffs estimate Class Members will recover 98 percent of their unpaid wages. (Doc. 127 at 4). Plaintiffs state the proposed settlement is fair and reasonable because the parties heavily dispute the amount of time Class Members spent waiting in line and completing the screening. For example, Walmart expert Robert Crandall reviewed hundreds of hours of video footage of the relevant screenings and concluded the average time spent waiting in line and completing the screening was 29.1 seconds (Doc. 127-2 at 7), while Plaintiffs estimate the uncompensated time to complete the screening

---

up a smaller portion of the settlement fund. *In re Online DVD-Rental Antitrust Litig*. 779 F.3d 934 (9th Cir. 2015). .

process was between 5.18 and 6.22 minutes.  (Doc. 127-2 at 7).  The settlement "provides a recovery of approximately 5.46 minutes of screening time, when factoring in the 5 minutes that Walmart previously paid." (Doc. 127-2 at 7).

Considering Plaintiffs' expected recovery, the Court concludes that the settlement falls within the range of possible approval.  Walmart has already compensated Class Members for five minutes of time per shift, which its expert estimates easily compensated Class Members for their time.  Plaintiffs' expert estimates Plaintiffs must be compensated for an additional 0.18 to 1.22 minutes of time above the five minutes Walmart previously paid.  Plaintiffs estimate Class Members will receive 98 percent of their wages owed, which is significantly higher than the minimum district courts have accepted.  *See, e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198, 2016 WL 5907869, at *7–8 (N.D. Cal. Oct. 11, 2016) (preliminarily approving settlement worth 8.1% of the full verdict value)

On balance, the risks and costs of continued litigation balanced against the relief recovered here, warrant preliminary approval and comment from Class Members.  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004).  Plaintiffs estimate Class members will receive a high percentage of their wages owed, and they continue to face the question of whether some of the time they allege Walmart failed to compensate them for is indeed compensable under California law.  Accordingly, consideration of the fairness factors warrants preliminary approval of the Settlement Agreement. *Uschold v. NSMG Shared Services*, 333 F.R.D. 157, 172 (N.D. Cal. Oct. 9, 2019) (finding where continuing litigation "presents risks to Plaintiffs regarding any recovery, much less recovery of less than the high-end estimate . . . the risks and costs of continued litigation at least balance the benefit of the estimated payout to class members, warranting preliminary approval and comment from the class members.").

2. <u>Class Notice</u>

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see*

*also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). Due process also requires that any class member bound by a class action settlement, at a minimum, be afforded the opportunity "to remove himself from the class." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) (citation and internal quotation marks omitted).

For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and clear language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the right of a class member to appear through an attorney, if desired; (5) the right to be excluded from the settlement; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575 (internal quotation marks and citations omitted).

As discussed above, the proposed notice plan provides for direct, individual notice to Class Members by email, and if Class Members cannot be reached by personal email, they will be reached by U.S. mail. (Doc. 127-1 at 16-17). The notice will describe the substance of the settlement, the formula used to calculate individual settlements, and the estimated range of an individual's settlement (based on the range of possible opt-in rates to the FLSA class). (Doc. 127-1 at 17). The notice also provides Class Members the procedure and time period for objecting to the settlement and information on opting out of the procedure. (*Id.*). The procedures are sufficient to ensure that Class Members receive adequate notice of the settlement and an opportunity to object. Accordingly, the notice and the notice plan support preliminary approval.

3.    Attorney's Fees and Costs

Reasonable attorneys' fees and costs are allowed under the FCRA, 15 U.S.C. § 1681n(a)(3), and Federal Rule of Civil Procedure 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 963 ("[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class

action settlement agreement.").  Use of the lodestar method is appropriate to calculate attorneys' fees under a federal fee-shifting statute like the FCRA.  *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007); *see also Staton*, 327 F.3d at 965; *Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886, 887 (9th Cir. 2010) ("Under a fee shifting statute such as the FCRA . . . the lodestar method is generally the correct method for calculating attorneys' fees.").

Here, the Settlement Agreement allows for class counsel to seek an award of attorneys' fees and costs of not more than 33.33% of the Gross Settlement Amount, or $1,733,160 in attorneys' fees, plus reasonable litigation costs not to exceed $261,751.87.  These amounts will include all time expended by class counsel, including any time spent securing Court approval of this agreement and any appeals.  The Settlement Agreement provides that all fees and costs will be paid from the Gross Settlement Amount, and neither Plaintiffs nor class counsel will have the right to revoke this Settlement Agreement in the event the Court does not approve the attorneys' fees sought by class counsel.  (Doc. 12701 at 14).  If the Court reduces the requested attorneys' fees and costs, the reduction will be applied to the net settlement amount.  (*Id.*).

A 33.3% attorneys' fee award falls at the high end of what courts in the Ninth Circuit have deemed appropriate.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.").  As with the enhancement award, the Court will take up the award of attorney's fees and costs, at the final approval stage.  Plaintiffs also request reimbursement of $261,751.87 in costs related to the prosecution of this litigation, though the basis for these costs is unclear.

By May 20, 2024, class counsel will file a motion for fees and costs including declarations with detailed billing records and an itemized summary of each category of costs so that the Court may determine an appropriate lodestar figure and whether costs are reasonable expenses incurred for the benefit of the class, and to allow class members the opportunity to object to the requested fees and costs.  *See In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 995 (9th Cir. 2010) (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice).

# V.    CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.    Plaintiffs Amado Haro and Rochelle Ortega's unopposed motion for preliminary approval of a class action settlement (Doc. 127) is granted;

2.    The proposed settlement (Doc. 127-1) detailed herein is approved on a preliminary basis as fair and adequate;

3.    For settlement purposes, the Court hereby GRANTS class certification under Rule 23 on behalf of the following individuals: "all individuals who worked at a Walmart retail store in California as a nonexempt store employee at any point between April 10, 2020, and February 6, 2023" (the "California Class");

4.    For settlement purposes, the Court hereby GRANTS collective certification under 29 U.S.C. § 216(b) of the Fair Labor Standards Act on behalf of the following individuals: "all individuals who worked at a Walmart retail store in California as a nonexempt store employee at any point between April 10, 2020 and February 6, 2023 and all individuals who submitted FLSA opt-in forms in this Action on or before September 10, 2023" (the "FLSA Class");

5.    Don Foty of Hodges & Foty, LLP is appointed as counsel for the Class;

6.    Haro and Ortega are appointed as the Class Representatives for settlement purposes;

7.    The form of "Notice of Class Action and FLSA Settlement" ("Notice") attached to the Settlement Agreement as Exhibit A, is hereby approved.  The form of "FLSA Opt-In Form" ("Opt-In Form") attached to the Settlement Agreement as Exhibit B, is hereby approved;

8.    The Court authorizes emailing and mailing of the Notice and Opt-In Form to the California Class and FLSA Class by email and by first-class U.S. mail to their last known email addresses and mailing addresses within 45 days of receipt of the information to send the Notice and Opt-In Form from Defendant.  Defendant shall provide the Settlement Administrator with the information necessary to conduct

24

this email/mailing as set forth in the Settlement Agreement within 30 days of this order;

9.  The deadline for the Settlement Administrator to file a declaration attaching a copy of the notices ultimately sent to the classes and describing the notice process is May 20, 2024;

10. The deadline for filing the motion for attorney's fees, costs, and service award is May 20, 2024;

11. The deadline for class members to object to the proposed settlement and/or the motion for attorney's fees, costs, and service award is June 20, 2024;

12. Plaintiffs shall file their motion for final approval of the proposed settlement by July 20, 2024;

13. The hearing for final approval of the proposed settlement is set for September 4, 2024, at 9:30 a.m. in Courtroom 7 (SKO) before Magistrate Judge Sheila K. Oberto.  The Court reserves the right to vacate the hearing and take the matter under submission (*see* E.D. Cal. L.R. 230(g)) in the event no objections to the proposed settlement and/or the motion for attorney's fees, costs, and service award is received by the Settlement Administrator or filed with the Court, or if the Court does not deem such hearing necessary.

IT IS SO ORDERED.

Dated:   **March 18, 2024**                    */s/ Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE

25