Matthew S. Parmet (SBN 296742)
PARMET PC
340 South Lemon Avenue, #1228
Walnut, California 91789
Tel: (310) 928-1277
matt@parmet.law

Don J. Foty (*Pro Hac Vice*)
HODGES & FOTY, LLP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Tel: (713) 523-0001
dfoty@hftrialfirm.com

*Counsel for Plaintiffs and Class Members*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMADO HARO and ROCHELLE ORTEGA, On Behalf of Themselves and All Others Similarly Situated,<br><br>       Plaintiff,<br><br> v.<br><br>WALMART, INC.,<br><br>       Defendant. | Case No. **1:21-CV-00239-KES-SKO**<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Hearing Date: September 4, 2024**<br>**Time:    9:30 a.m.**<br>**Courtroom: 7**<br>**Floor:    6**<br>**Judge:   Hon. Sheila K. Oberto** |

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that on September 4, 2024 at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7, Sixth Floor, before the Honorable Sheila K. Oberto, Plaintiffs Amado Haro and Rochelle Ortego ("Plaintiffs") will move this Court for an Order: (1) granting final approval of the proposed class action settlement of this action (the "Settlement"); (2) approving the motion for attorney's fees, costs, and service awards; and (3) dismissing this action with prejudice. The proposed Settlement creates a fund of Five Million Two Hundred Thousand Dollars ($5,200,000.00) to be paid by Defendant for the benefit of the Class Members. If approved, the proposed Settlement would resolve all of the claims raised in this lawsuit. The Court should approve the Settlement because it is fair and reasonable for the Class Members.

This Motion is based on the Memorandum of Points and Authorities submitted below, (1) the accompanying Declaration of Don Foty, (2) the Declarations of Plaintiffs Amado Haro and Rochelle Ortega, (3) the Declaration of Sara Schwermer-Sween from Rust Consulting, Inc., (4) the previously filed Motion for Preliminary Approval, (5) the previously filed Motion for Approval of Attorney's Fees, Costs, and Service Awards, and (6) all papers on file in this action.

Respectfully submitted,

Dated: July 31, 2024                                  HODGES & FOTY, LLP

By:    */s/ Don J. Foty*
Don Foty
Attorneys for Plaintiffs and Class Members

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND................................................................................ 2

III.    PROCEDURAL HISTORY................................................................................. 3

IV.     MEDIATION ...................................................................................................... 5

V.      SETTLEMENT TERMS .................................................................................... 5

VI.     PRELIMINARY APPROVAL ............................................................................ 6

VII.    DISSEMINATION OF THE NOTICE................................................................ 6

VIII.   THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL............. 7

    A.  The Settlement Agreement Resulted from Arm's-Length Negotiations by Experienced Class Action Lawyers and was Based on Significant Investigation and Discovery..... 8

    B.  The Strength of Plaintiffs' Claims and Defendant's Defenses Favor Final Approval. ...................................................................................................... 10

        1.  *The time spent waiting in line and completing the COVID-19 screening.* ................. 10

        2.  *The time spent by the Plaintiffs and Class Members after they completed the COVID-19 screenings but before they clocked-in* .................................................. 12

        3.  *The amount of time spent off-the-clock was greater than five minutes* ...................... 14

    C.  The Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval. ................................................................................................ 14

    D.  Risk of Maintaining Class Action Status Through Trial Favors Approval. ............... 15

    E.  The Amount of the Settlement Favors Final Approval................................................ 15

    F.  The Stage of the Proceedings and Extent of Discovery Favor Final Approval. ......... 17

    G.  The View of Experienced Counsel Favors Final Approval. ....................................... 18

    H.  The Class's Reaction to the Settlement Favors Final Approval. ................................ 18

    I.  The Court Should Grant Final Approval. .................................................................. 19

IX.     THE NOTICE TO THE CLASS MEMBERS SATISFIED DUE PROCESS ................. 20

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE AUTHORITIES

Page(s)

Cases

*Aguilar v. Mgmt. and Training Corp.*,
  948 F.3d 1270 (10th Cir. 2020) ................................................................. 13

*Anderson-Butler v. Charming Charlie Inc.*,
  2015 U.S. Dist. LEXIS 149080 (E.D. Cal. Nov. 3, 2015) .......................... 22

*Augustus v. ABM Security Services, Inc.*,
  2 Cal. 5th 257 (2016) ................................................................................. 10

*Barney v. Nova Lifestyle, Inc.*,
  2022 U.S. Dist. LEXIS 155604 (C.D. Cal. Aug. 29, 2022) ....................... 22

*Bellinghausen v. Tractor Supply Co.*,
  303 F.R.D. 611 (N.D. Cal. 2014) .............................................................. 16

*Bono Enterprises, Inc. v. Bradshaw*,
  32 Cal. App. 4th 968 (1995) ................................................................. 11, 12

*Boyd v. Bechtel Corp.*,
  485 F.Supp. 610 (N.D. Cal. 1979) ............................................................ 18

*Browne v. American Honda Motor Co., Inc.*,
  2010 WL 9499072 (C.D. Cal. July 29, 2010) ........................................... 18

*Browning v. Yahoo! Inc.*,
  2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ......................... 22

*Burzdak v. Universal Screen Arts, Inc.*,
  2024 U.S. Dist. LEXIS 1289 (N.D. Cal. Jan. 3, 2024) .............................. 22

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .................................................................. 19

*Chem. Bank v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................. 19

*Chen v. Chase Bank United States*,
  2020 U.S. Dist. LEXIS 7810 (N.D. Cal. Jan. 16, 2020) ............................ 22

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...................................................................... 7

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Cody v. Soulcycle Inc.*,
  2017 U.S. Dist. LEXIS 234741 (C.D. Cal. June 22, 2017) ................................... 22

*Cohorst v. BRE Properties, Inc*.,
  2012 WL 153754 (S.D. Cal. Jan. 18, 2012) ............................................... 20

*Corcoran v. CVS Health*,
  2019 U.S. Dist. LEXIS 204509 (N.D. Cal. Nov. 22, 2019) ................................. 22

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ........................................................ 15

*Duncan v. Aliera Co., Inc.*,
  2023 U.S. Dist. LEXIS 105847 (E.D. Cal. June 15, 2023) ................................. 22

*Dunk v. Ford Motor Co*.,
  48 Cal. App. 4th 1794 (1996) .......................................................... 7

*Dynamex Operations West, Inc., v. Superior Court*,
  4 Cal. 5th 903 (2018) ................................................................ 10

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................. 20

*Estrada v. iYogi, Inc.*,
  2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) .................................. 22

*Frame v. Hillman*,
  2002 WL 34520817 (S.D. Cal. July 31, 2002) ............................................ 15

*Frlekin v. Apple Inc.*,
  2021 U.S. Dist. LEXIS 246919 (N.D. Dec. 28, Cal. 2021) ................................. 22

*Frlekin v. Apple, Inc*.,
  8 Cal. 5th 1038 (2020) ............................................................... 11

*Gaston v. Fabfitfun, Inc.*,
  2021 U.S. Dist. LEXIS 147383 (C.D. Cal. Apr. 2, 2021) .................................. 22

*Habberfield v. Boohoo.com USA, Inc.*,
  2023 U.S. Dist. LEXIS 201114 (C.D. Cal. Nov. 8, 2023) .................................. 22

*Hanlon v. Chrysler Corp*.,
  150 F.3d 1011 ...................................................................... 7, 8

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Haro v. Walmart, Inc.*,
    2024 U.S. Dist. LEXIS 47807 (E.D. Cal. Mar. 18, 2024) ........................................ 22

*Hernandez v. Pacific Bell Telephone Co.*,
    29 Cal. App. 5th 131 (2018) ........................................ 11

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005) ........................................ 13

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 ........................................ 8, 19

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015) ........................................ 22

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................ 8

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................ 18

*In re NVIDIA Corp. Derivative Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................ 9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................ 9, 15

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................ 22

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................ 7, 18

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................ 8, 16

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F.3d 922 (8th Cir. 2005) ........................................ 15

*Industrial Welfare Com. v. Superior Court*,
    27 Cal. 3d 690 (1980) ........................................ 10

*Keirsey v. eBay, Inc.*,
    2014 U.S. Dist. LEXIS 20684 (N.D. Cal. Feb. 14, 2014) ........................................ 22

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................................ 18

*Kulesa v. PC Cleaner, Inc.*,
   2014 U.S. Dist. LEXIS 194839 (C.D. Cal. Aug. 26, 2014) ..................................... 22

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .................................................................................. 22

*Martin v. AmeriPride Servs.*,
   2011 WL 2313604 (S.D. Cal. June 9, 2011) .......................................................... 18

*Martinez v. Combs*,
   49 Cal. 4th 35 (2010) .............................................................................................. 10

*Martinez v. Knight Transp.*,
   2023 U.S. Dist. LEXIS 51757 (quotation omitted) ................................................ 19

*Mendiola v. CPS Security Solutions, Inc.*,
   60 Cal. 4th 833 (2015) ............................................................................................ 10

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. Mar. 9, 2016) ................................................ 22, 23

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000) ................................................................................. 10, 11, 13

*Nat'l Rural Telecomm. v. DirectTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 10, 14, 17

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................. Passim

*Perkins v. Linkedin Corp.*,
   2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016) ...................................... 22

*Perks v. ActiveHours, Inc.*,
   2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021) ..................................... 22

*Portal Software*,
   2007 WL 1991529 ............................................................................................. 16, 20

*Rael v. Children's Place, Inc.*,
   2021 U.S. Dist. LEXIS 63117 (S.D. Cal. Mar. 31, 2021) ...................................... 22

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Richards v. Chime Fin., Inc.*,
   2020 U.S. Dist. LEXIS 201079 (N.D. Cal. Oct. 28, 2020) ....................................... 22

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................................. 18, 20

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................ 8

*Senne v. Kansas City Royals Baseball Corp.*,
   934 F.3d 918 (9th Cir. 2019) ................................................................................ 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................. 7

*Stewart v. Accurate Background, LLC*,
   2024 U.S. Dist. LEXIS 49931 (N.D. Cal. Mar. 20, 2024) ..................................... 22

*Swinton v. SquareTrade, Inc.*,
   2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) ..................................... 22

*Tadepalli v. Uber Techs.*,
   2015 U.S. Dist. LEXIS 169076 (N.D. Cal. Dec. 17, 2015) ................................... 22

*Thieriot v. Celtic Ins. Co.*,
   2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ...................................................... 10

*Thomas v. Cognizant Tech. Sols. U.S. Corp.*,
   2013 WL 12371622 (C.D. Cal. June 24, 2013) .................................................... 16

*Troester v. Starbucks Corp.*,
   5 Cal. 5th 829 (2018) .......................................................................................... 11

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (2002) .......................................................................................... 15

*Wren v. RGIS Inventory Specialists*,
   2009 WL 2612307 (N.D. Cal. Aug. 24, 2009) ..................................................... 13


Statutes

29 U.S.C. § 201 .......................................................................................................... 4

California Business & Professions Code §§ 17200 ..................................................... 3

California Labor Code § 226 ........................................................................ 3, 5

California Labor Code § 2802 ......................................................................... 3


Rules

Fed. R. Civ. Proc. 23(c)(2)(B) ................................................................. 20, 21

Rule 23 .................................................................................................. 4, 21

Rule 23(c)(2) ............................................................................................. 21

Rule 23(e) of the Federal Rules of Civil Procedure ................................... 1, 7


Regulations

Cal. Code Regs., tit. 8, § 11070 ............................................................ 10, 11

29 C.F.R. § 790.6(b) .................................................................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Haro and Ortega respectfully seek final approval of the $5,200,000 non-reversionary Settlement. Final approval is warranted here because the Settlement Agreement is fair, reasonable, and adequate. This Settlement was reached following a thorough evaluation of the claims and facts alleged in this action, and after mediation with an experienced mediator - Antonio Piazza.  This Settlement is an excellent result obtained without the risks, expenses, and delay of further litigation.

221,392 people were sent the Notice of the Settlement.  In a testament to the fairness and reasonableness of the Settlement, not a single Class Member objected to the Settlement. Additionally, only 19 individuals excluded themselves.  19 people out of 221,392 is 0.0086%. That virtually all Class Members chose to participate in this Settlement and none objected to it further demonstrates that the Settlement is fair and reasonable.

If the Court approves this Settlement, the Class Members will each receive a monetary payment that is proportionally based on their dates of employment and weeks worked. It includes no claims procedure, and no reversion to Walmart for uncashed checks issued to the Class Members.  A copy of the Settlement Agreement is attached as Exhibit 1.

Plaintiffs believe that the proposed Settlement is fair and reasonable and will provide a benefit to the Class Members.  This is especially true because Walmart previously paid the Class Members five minutes of pay for each shift worked during the COVID pandemic.  While the Parties have different views on the availability of class certification, the merits of the case, and the damages at issue, the Settlement provides additional money to the Class Members on top of the five minutes of pay per shift that they already received.  Walmart claims that even though it paid five minutes per shift worked from April 2020 to March 2023, its employees did not necessarily undergo a COVID screening each shift.   The Settlement provides for a recovery that is approximately 98% of the amount of unpaid wages owed to the Class Members at nearly one minute of additional time worked off-the-clock as a result of the COVID screenings, assuming

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

unpaid time on every other shift.  That is the Settlement provides additional pay to the Class Members on top of the five minutes per shift that Walmart previously paid them for screening.

Therefore, the Parties believe that the Settlement is fair, reasonable, and adequate.

## II.  FACTUAL BACKGROUND

Following the outbreak of the Coronavirus, Walmart implemented a company-wide policy requiring all hourly paid employees to pass a COVID-19 health screening (hereinafter the "screening") in order to work for the day.[1]  This policy was not limited to certain locations or particular workers.[2]  Instead, every Walmart store in California conducted the screening and every hourly employee in California was required to complete the screening each shift.[3]  Walmart's written policy states: "Every associate must screen every day at the start of their shifts – there are no exceptions."[4]  The policy further states that if any employee refuses, they will be sent home on a "Level 1 leave."[5]  Level 1 leave is leave without pay.[6]

The process for conducting the screening was the same across all Walmart stores.[7]  Under Walmart's company-wide policy, every hourly employee was required to (1) report to a designated location at a Walmart store, (2) possibly wait in line standing six feet apart from other employees, (3) answer the same questions about whether they had any signs or symptoms of the Coronavirus, (4) have their temperature taken, (5) wear a Walmart approved mask, and (6) pass the health examination *before* clocking-in for the day.[8]  Walmart's policy states: "After the health screening,

---

[1] Dkt. 42 - Ex. "22" – Deposition of Brandy Jordan at 47:14 – 48:6; Dkt. 42 - Ex. "25" – Deposition of Mark Hegarty at 80:5-11; Dkt. 42- Ex. "26" – Deposition of Steve Tapp at 62:21 – 63:9; Dkt. 42 - Exs. "30," "33," & "37."

[2] *Id.*

[3] Dkt. 13 at ¶ 22 ("Walmart admits that, after the outbreak of the coronavirus, it implement a policy requiring its hourly, non-exempt employees to pass through COVID-19s screening on each shift."); Dkt. 42 - Ex. "22" at 48:2 – 49:24, 50:10-13.

[4] Dkt. 42 - Ex. "31."

[5] *Id.*

[6] Dkt. 42 - Ex. "25" at 62:21-25; Dkt. 42 - Ex. "27" – Deposition of Tonya Halliburton at 80:21-24.

[7] Dkt. 42 - Ex. "22" at 48:20 – 49:4, 65:18-21; Dkt. 42 - Ex. "25" at 191:23 – 192:6; Dkt. 42 - Ex. "26" at 71:2-16, 88:21 – 89:6; Dkt. 42 - Ex. "30."

[8] Dkt. 42 - Ex. "22" at 47:14 – 48:6; Dkt. 42 - Ex. "25" at 80:5-11; Dkt. 42 - Exs. "31," 33, "36," & "37."

associates should clock in as normal."[9]  The policy further states: "Associates are still expected to clock in (after their screening) on time."[10]

After passing the screening, employees at Walmart were required under Walmart's policy to "clock-in as normal."[11]  The time clocks at the Walmart stores were located at different distances from the screening area, with some being hundreds of feet away.[12] Therefore, the screening process involved the same three steps.  Employees were to: (1) report to the designated location and wait in line, (2) complete the screening process, and (3) walk from the designated location to the time clocks.[13]

Walmart claims that it automatically paid five minutes per shift to each employee. Plaintiff contend this pay was  to only compensate for (1) the time spent waiting in line, and (2) the time spent in the screening.[14]    Plaintiffs argued that when adding the time spent off-the-clock for walking from the screening area to the time clock, a five minute payment was insufficient.[15]  Walmart counters that the time spent walking to the time clocks is not compensable.  Even if it is compensable, Walmart asserts that five minutes was more than sufficient and that if it was not, any employee of Walmart could have reported the additional time to Walmart and receive payment for that time.

### III.    PROCEDURAL HISTORY

On February 23, 2021, Plaintiffs filed this action alleging that Walmart (1) failed to pay them for all hours worked, (2) failed to pay them overtime wages, (3) provided to them invalid wage statements, and (4) a derivative violation of California Business & Professions Code §§ 17200, *et seq.* (through violation of California Labor Code § 2802 and/or California Labor Code § 226). (*See* Dkt. 1.).  Plaintiffs filed this lawsuit as a collective action under the Fair Labor

---

[9] Dkt. 42 - Ex. "31."
[10] *Id.*
[11] Dkt. 42 - Ex. "29" at 133:9 – 134:7; Dkt. 42 - Ex. "35" – Walmart's Punctuality Policy.
[12] Dkt. 42 - Ex. "43."
[13] Dkt. 42 - Ex. "26" at 117:15 – 118:3; Dkt. 42 - Ex. "27" at 71:22 – 72:25, Dkt. 42 - Ex. "28" at 84:9-17, 85:7-19, 106:5-13, 107:14 – 108:3.
[14] Dkt. 42 - Ex. "22" at 114:6-16; Dkt. 42 - Ex. "26" at 117:5 – 118:25; Dkt. 42 - Ex. "29" at 186:15 – 187:17, 187:24-188:2, 190:7-11.
[15] Dkt. 42 - Ex. "4" at p 2, 11.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Standards Act, 29 U.S.C. § 201, et seq. and as a Rule 23 Class Action under the California Labor Code. *Id*. Plaintiffs sought damages on their behalf and on behalf of the putative classes. *Id*.

Since the inception of this case, the Parties have engaged in extensive merits-based and class discovery and both sides have vigorously litigated this case. Both sides served initial disclosures, document requests and interrogatories. Specifically, (i) the Parties have conducted 31 depositions, (ii) Plaintiffs have propounded 29 interrogatories, six requests for admission, and 42 requests for production, (iii) Defendant has propounded 48 requests for production and 23 interrogatories to Plaintiff Haro and 48 requests for production and 23 interrogatories to Plaintiff Ortega, and (iv) Defendant has produced thousands of pages of information, including both traditional and electronic discovery. (Exhibit "2" - Foty Declaration at ¶ 12).   The Parties also produced six expert reports addressing the merits of the case, damages, and class certification. (*Id*.) Plaintiffs produced expert reports from Liesl Fox, Ph.D., Richard Drogin, Ph.D., and Steve Hopper. (*Id*.) Walmart produced expert reports from Nathan Woods, Ph.D., Brian Grieser, and Robert Crandall.  The Parties also deposed each side's experts. (*Id*.)

In addition to the significant discovery that was completed, the Parties also engaged in extensive motion practice. (*Id*.)  Defendant filed a motion for summary judgment on June 28, 2022. (Dkt. 31).  Plaintiffs filed a substantive response to the motion for summary judgment, (Dkt. 36), and a motion to continue the motion for summary judgment. (Dkt. 34).  Plaintiffs filed a motion to certify a class under Rule 23, (Dkt. 43), and a motion for conditional certification under the Fair Labor Standards Act. (Dkt. 41).  Defendant opposed the motion for conditional certification. (Dkt. 59).  Defendant also opposed the motion for class certification. (Dkt. 58).  Additionally, Defendant filed a motion to strike the expert declaration of Dr. Drogin. (Dkt. 60). Plaintiffs moved to strike the expert declaration of Dr. Woods, (Dkt. 99), and a motion to strike the declarations submitted by Defendant in opposition to Plaintiffs' motion for class certification. (Dkt. 109). Plaintiffs' Counsel also moved to be appointed by the Court as interim class counsel. (Dkt. 72).  Findings and Recommendations granting the motion for appointment as interim class counsel were issued on February 27, 2023. (Dkt. 91).   This procedural history demonstrates that significant issues

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

pertaining to liability, damages, and class certification were fully developed and explored prior to reaching this Settlement.

### IV.    MEDIATION

On September 11, 2023, the Parties attended a full-day mediation with experienced mediator Antonio Piazza. Mr. Piazza is a well-regarded mediator who has mediated hundreds of class action cases. Based on the extensive discovery and investigation undertaken, Plaintiffs were able to engage in well-informed settlement negotiations with Defendant. Negotiations between the Parties were rigorous and conducted at arms-length. Mr. Piazza played an active role in the settlement negotiations, including identifying each side's strengths, weaknesses, and risks. Mr. Piazza also had the benefit of detailed briefs, dozens of exhibits (including statistical modeling and deposition excerpts), and hours of in-person discussions with the Parties and their counsel. This process culminated in Mr. Piazza making a neutral and informed mediator's proposal, which both sides accepted.

### V.    SETTLEMENT TERMS

The Settlement provides for additional monetary relief to the Class Members, on top of the five minutes of pay per shift they have already received. The Settlement is for $5,200,000.00 to be divided amongst the Class Members proportionally based on their dates of employment and weeks worked. Defendant also agrees to pay the employer's share of the applicable payroll taxes in addition to the gross settlement amount. There will be no claims process because the Claims Administrator will process checks for everyone who has not properly requested to be excluded.

The release of claims is a limited release that applies only to the claims asserted in this lawsuit. Specifically, the release of claims is for all California law claims alleged in this action based on Plaintiffs' claim that Walmart failed to pay its non-exempt hourly workers for the time they spent completing COVID-19 screenings through the date of final approval of the Settlement.[16]

---

[16] The Release at issue also covers Plaintiffs' claims under California Labor Code 226 for invalid wage statements. This claim was based primarily on the assertion that Walmart identified the hours worked inaccurately on the wage statements by not including the amount of time spent in the COVID screenings. The Settlement at issue takes into consideration the fact that this wage statement claim is a derivative claim from the underlying wage claim and that there were risks to pursuing this claim given that Walmart argued that there was a good faith dispute as to whether

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Additionally, the Settlement at issue provides for a resolution of the claims raised under PAGA. The PAGA claims raised in this lawsuit will be released by all Class Members.

In addition, the Class Members who opted into the settlement of the FLSA claims will release the FLSA claims alleged in this action through the date of final approval of the Settlement. 8,117 Class Members have opted into the settlement of the FLSA claims. (*See* Ex. "3" – Declaration of Sara Schwermer-Sween at ¶¶ 12, 13).

The Settlement provides for an enhancement award of $10,000 each to the two Named Plaintiffs. Further, the Settlement provides for fees of 1/3 plus costs to Plaintiffs' Counsel. Plaintiffs' Counsel has previously filed a Motion for Approval of Attorney's Fees, Costs, and Service Awards. (Dkt. 143).

## VI.    PRELIMINARY APPROVAL

On March 18, 2024, the Court granted Preliminary Approval of the Settlement. (Dkt. 135). The Court found "no obvious deficiencies on the face of the Settlement Agreement that would preclude preliminary approval." (*Id*. at p. 18). Additionally, the Court found that the Settlement fell within the range of possible approval. (*Id*. at p. 21). The Court conditionally certified the Settlement Class as defined in the Settlement Agreement. (*Id*. at p. 16). The Court also approved Settlement Notice and authorized it to be distributed to the Class Members. (*Id*. at p. 24-25). The Court also set a deadline for the Class Members to object to the Settlement or opt out of the Settlement. (*Id*.)

## VII.    DISSEMINATION OF THE NOTICE

On June 3, 2024, the Settlement Administrator – Rust Consulting, Inc. – mailed to 75,657 Class Members the Class Notice via first class mail. (Ex. "3" at ¶ 6). Additionally, on June 3, 2024, the Settlement Administrator emailed the Class Notice to 145,735 Class Members. (*Id*. at ¶ 7). That same day, the Settlement Administrator set up a website with the address www.HaroWalmartSettlement.com. (*Id*. at ¶ 5). The website included the Class Notice,

---

the additional time was worked by the Class Members and should have been listed on the wage statements at all.

Preliminary Approval Order, and the Settlement Agreement for all to view, download, and print. (*Id.*).

No Class Member has objected to the Settlement. Only 19 Class Members have opted out of the Settlement. (*Id.* at ¶ 14). 8,117 Class Members have affirmatively opted into the settlement of the FLSA claims. (*Id.* at ¶¶ 12, 13).

## VIII. THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

A settlement of a class action requires approval of the court. Fed. R. Civ. P. 23(e). To warrant final approval, a class settlement must be fair, adequate, and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995). The purpose of this requirement is to "prevent fraud, collusion or unfairness to the class." *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1800-01 (1996). The court has broad discretion in determining whether to approve or reject a proposed settlement, but generally, there is a strong judicial preference for pre-trial settlement of complex class actions. *See Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

In evaluating the settlement, the court need not address whether the settlement is ideal or the best outcome, but is only to determine whether the settlement is fair, free of collusion and consistent with the plaintiff's fiduciary obligations to the class. *See Hanlon, supra*, 150 F.3d at1027. The following are the factors the court may consider in order to approve a class action settlement:

> (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of governmental participants; and (8) the reaction of the class members to the proposed settlement.

*Officers for Justice, supra*, 688 F.2d at 625; *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon, supra*, 150 F.3d at 1026. The Settlement satisfies the above requirements.

A. **The Settlement Agreement Resulted from Arm's-Length Negotiations by Experienced Class Action Lawyers and was Based on Significant Investigation and Discovery.**

The Court should look to whether the proposed settlement appears to be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *see also Hanlon*, 150 F.3d at 1027 (courts are deferential "to the private consensual decisions of the parties.") (citing *Officers for Justice v. Civil Serv. Comm 'n.*, 688 F.2d 615, 625 (9th Cir. 1982)). Indeed, when a settlement is negotiated at 'arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See Tableware*, 484 F. Supp. 2d at 1080; *City P'ship*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement.").

To that end, the courts have recognized "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-cv-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007.

Here, the Parties only attended mediation after significant discovery and motion practice was completed. Indeed, briefing on class certification, conditional certification, and expert challenges were completed before the Parties attended mediation. By that point in time, the record had been well-developed through fact and expert discovery.

The proposed Settlement here is the product of extensive, arm's-length negotiations, which included an all-day mediation session with Antonio Piazza -- a private mediator experienced in class action matters. (Ex. "2" at ¶ 14). Counsel were thus able to make informed assessments regarding the merits of their claims and defenses. *See In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) ("the class settlements were reached on the eve of trial when class counsel had completed discovery and had conducted

extensive motion practice and were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement."). The negotiations were informed by the knowledge Plaintiffs' Counsel gained through discovery, with the aid of a statistics expert who calculated an estimate of the amount owed. Based on their familiarity with the factual and legal issues, and armed with a thorough understanding of the strength and weaknesses of the claims at issue, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and have produced a result that the Parties believe to be in their respective interests.  (Ex. "2" at ¶ 14).  In fact, when it appeared that the Parties were unable to reach an agreement, Mr. Piazza made a mediator's proposal, which both sides accepted.  (*Id.* at ¶¶ 14, 22); *see also Zynga, Inc.*, 2015 WL 6471171, at *9 ("The use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'").

Additionally, Plaintiffs' Counsel carefully evaluated the merits of the case, concluding that they have a strong case and that there is sufficient evidence to proceed to a jury. Plaintiffs' Counsel, however, recognize that there exist challenges in this litigation that could pose significant risks regarding their ability to prevail and the scope of damages available if the case were to proceed to trial, and thereafter, an appeal before the Ninth Circuit.  Even if Plaintiffs emerged victorious after appeal, there can be no doubt that the appeal would be lengthy and costly for all sides. *Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, *5 (approving settlement; "prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery").  As such, Plaintiffs' Counsel believes the Settlement is fair and reasonable. (Ex. "2" at ¶¶ 19-22).  *See*, *e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (counsel's recommendation weighed in favor of settlement, given counsel's familiarity with the dispute and significant experience in securities litigation).

**B.  The Strength of Plaintiffs' Claims and Defendant's Defenses Favor Final Approval.**

To determine the fairness of the proposed Settlement, the strength of the plaintiff's case on the merits is balanced against the settlement offer. *Nat'l Rural Telecomm. v. DirectTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004). Even where the plaintiff's case might be strong, litigation poses risks, especially where the defendant denies liability and opposes certification. *See Thieriot v. Celtic Ins. Co*., 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011). Here, although Plaintiffs are confident in their position, they acknowledge that there are certain weaknesses in their legal claims.

### 1.  *The time spent waiting in line and completing the COVID-19 screening*.

Plaintiffs contend that the time spent by the Plaintiffs and Class Members waiting in line and undergoing the COVID-19 screenings is compensable under California law.  The Industrial Welfare Commission (IWC) was established "to fix minimum wages, maximum hours of work, and standard conditions of labor." *Martinez v. Combs*, 49 Cal. 4th 35, 50 (2010).  Wage orders issued by the IWC are to be construed so as to promote employee protection. *Mendiola v. CPS Security Solutions, Inc*., 60 Cal. 4th 833, 840 (2015). Indeed, IWC wage orders must be "liberally construed in a manner that serves its remedial purposes" of protecting and benefitting employees. *Dynamex Operations West, Inc., v. Superior Court*, 4 Cal. 5th 903, 953 (2018); *see also Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257, 262 (2016) (finding that when construing wage orders, courts adopt the construction that best gives effect to the Legislature and the IWC's purpose of protecting employees); *Industrial Welfare Com. v. Superior Court,* 27 Cal. 3d 690, 702 (1980) (same).

Wage Order 7, Cal. Code Regs., tit. 8, § 11070, requires employers to pay their employees a minimum wage for all "hours worked," *id.*, § 11070, subd. 4(B), defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id.*, § 11070, subd. 2(G). Therefore, Wage Order 7 establishes two separate tests to determine whether an activity must be paid by an employer: (1) whether the employee is subject to the control of the employer, and (2) whether the employer suffered or permitted the employee to perform the work.  *Morillon v. Royal Packing Co.*, 22 Cal. 4th 575, 582 (2000). Thus, an employee who is *subject to the control* of an

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

employer does not have to be working during that time to be compensated. *Id.* Likewise, an employee who is *suffered or permitted to work* does not have to be under the employer's control to be compensated, provided the employer has or should have knowledge of the employee's work. *Troester v. Starbucks Corp.* 5 Cal. 5th 829, 853 (2018); *Hernandez v. Pacific Bell Telephone Co.,* 29 Cal. App. 5th 131, 137 (2018). Under either test, Plaintiffs contend the time spent by Walmart employees completing the COVID-19 screenings is compensable under California law.

A similar issue was addressed by the California Supreme Court in *Frlekin v. Apple, Inc*. In *Frlekin*, Apple required its retail store employees to undergo exit searches where the employees' bags, purses, and packages were searched. *Frlekin v. Apple, Inc*., 8 Cal. 5th 1038,1043-44 (2020). The Apple employees were required to clock out before submitting to the exit search and thus, they were not paid for that time. *Id*. at 1044. After applying the "control test," the California Supreme Court held that the Apple employees were entitled to compensation during the time they spent in the exit search because the "Apple employees are clearly under Apple's control while awaiting, and during, the exit searches." *Id*. at 1047. The *Frlekin* Court explained as follows:

> Based on the language of the control clause, Apple employees are entitled to compensation for the time during which they are subject to Apple's control. (Cal. Code Regs., tit. 8, § 11070, subd. 2(G).) Applying a strictly textual analysis, Apple employees are clearly under Apple's control while awaiting, and during, the exit searches. Apple controls its employees during this time in several ways. First, Apple requires its employees to comply with the bag-search policy under threat of discipline, up to and including termination. Second, Apple confines its employees to the premises as they wait for and undergo an exit search. Third, Apple compels its employees to perform specific and supervised tasks while awaiting and during the search. This includes locating a manager or security guard and waiting for that person to become available, unzipping and opening all bags and packages, moving around items within a bag or package, removing any personal Apple technology devices for inspection, and providing a personal technology card for device verification.

*Id*.

In finding that the exit searches were compensable, the California Supreme Court relied upon the decision of *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 972 (1995). In *Bono*, the court held that workers who were required to remain on the employer's premises during their lunch period were entitled to compensation for that time. *Id*. In reaching this decision, the court interpreted the phrase "subject to the control of an employer" to mean "[w]hen an employer

directs, commands or restrains an employee." *Id.* at 975.  Therefore, when an employer directs, commands, or retrains an employee at the workplace, that employee remains subject to the employer's control and must be paid. *Id.*

In Plaintiffs' view, the facts in this case are very similar to the facts in *Frlekin* and *Bono*. Plaintiffs assert that: (1) Walmart required every employee to complete the COVID-19 screening and it was not optional, (2) employees were confined to the premises of Walmart when they waited for and during the screening, and (3) Walmart compelled its employees under the threat of discipline to have their temperature taken and to answer questions about their health.

However, Walmart raised several defenses to this claim.  First, Walmart argued that the time spent completing the COVID-19 screenings was a minimal amount of time, at best.  Second, Walmart automatically paid each employee five minutes per shift for the time spent going through the COVID-19 screenings, and thus, overpaid its employees for this activity.  Third, Walmart argued that it had a policy to pay any employee who reported taking longer than five minutes to complete the COVID-19 screenings. Walmart asserted that these defenses were a complete bar to Plaintiffs' claims.

### 2. *The time spent by the Plaintiffs and Class Members after they completed the COVID-19 screenings but before they clocked-in.*

After the COVID-19 screenings were concluded, the Plaintiffs and Class Members were required to walk from the designated screening location (which generally was either in a tent outside the Walmart store, in the garden center, or the automotive center) and walk to the time clocks to clock-in.  The distance from the COVID-19 screening station to the time clocks was greater than two football fields at some locations.  Plaintiffs contend that, while walking to the time clocks, the Plaintiffs and Class Members were at times approached by customers with questions or their co-workers about work related matters.  Plaintiffs' expert has estimated that the average amount of time spent by the Plaintiffs' and Class Members after the COVID-19 screening was completed prior to clocking-in is approximately 4.52 minutes.

Plaintiffs contend this time is compensable because Walmart exercised control over its employees as soon as they reported to the screening location and maintained that control after the

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

screening was completed. After completing the screening, Walmart employees were required to clock-in by the start of their shifts. The Plaintiffs and Class Members were also required to follow Walmart's policies immediately after the screening was completed, were subject to discipline if they engaged in behavior that violated Walmart's policies at the facilities (even when they were off-the-clock), were required to use Walmart's clock-in system, and were required to follow Walmart's policies and procedures when clocking-in.  Under these facts, Plaintiffs contend the Class Members remained subject to Walmart's control after completing the health screening and that time is compensable. *See  Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 582 (2000); *Senne v. Kansas City Royals Baseball Corp*., 934 F.3d 918, 944-46 (9th Cir. 2019).

Further, once an employee begins a principal activity for the day, all activities after that must be compensated by the employer until the employee ceases working for the day. *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). In *IBP, Inc.*, the Supreme Court explicitly held that walking time which occurs after the performance of an employee's first principal activity of the day is compensable because it is part of the continuous workday. *Id*. at 37 ("during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity" is compensable). This what is known as the "continuous workday rule." *Wren v. RGIS Inventory Specialists*, No. Civ. A. 06-05778, 2009 WL 2612307, at *24 (N.D. Cal. Aug. 24, 2009). The continuous workday rule provides that once the first compensable activity is performed, then all subsequent activities are compensable. 29 C.F.R. § 790.6(b); *Aguilar v. Mgmt. and Training Corp.,* 948 F.3d 1270, 1279 (10th Cir. 2020) (collecting cases).  Here, Plaintiffs contend the first compensable activity was the COVID-19 screening.  Based upon this authority, the time spent after the COVID-19 screening.

Walmart countered that the time spent after the COVID-19 screenings is not compensable. During that time, Plaintiffs and the Class Members were free to engage in personal activities, such as sitting in the break room, shopping in Walmart stores, talking on their cell phones, and other personal tasks.  Walmart asserted that the time actually spent walking from the COVID-19 station to the time clocks was a minimal amount of time.

### 3. *The amount of time spent off-the-clock was greater than five minutes.*

The Parties heavily disputed the amount of time the Plaintiffs spent waiting-in line and completing the screening. Defendant's expert, Robert Crandall, viewed hundreds of hours of video footage of the COVID screenings and determined that the mean time spent waiting-in line and completing the screening was approximately 29.1 seconds. If the 29.1 seconds of time (for waiting and screening) is added to the 4.52 minutes of time spent walking to the time clocks, then the total amount of time spent off-the-clock is 5.01 minutes. However, if the time spent after the completion of the COVID-19 screenings is not compensable, then no unpaid wages are owed to the Plaintiffs and Class Members.

Under the Plaintiffs' model, if the mean screening time is added to the walking time of 4.52 minutes along with the waiting time analysis (assuming a random rate of arrival) of 0.94 minutes, then the average screening time is 5.95 minutes.

In light of these differing arguments, Plaintiffs faced significant risk that their claims would not be certified, and/or that they would not prevail at trial, should this litigation continue. Accordingly, this factor weighs in favor of final approval.

### C. <u>The Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval.</u>

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.*, 221 F.R.D. at 526, citing 4A Conte & H. Newberg, Newberg on Class Actions, §11:50 at 155 (4th ed. 2002). In analyzing this factor, the Court should compare the uncertainties of prolonged litigation with the immediate benefits that the settlement provides to the Class Members. *Id.*

Here, if this action progressed further, Plaintiffs would incur costs in conducting additional discovery, bringing and/or defending further dispositive motions, and (potentially) preparing for, and conducting trial. Plaintiffs' success on the merits is in no way guaranteed, as noted earlier. Further, any judgment reached at trial would not necessarily end this litigation, as the losing party would likely appeal. Appeals before the Ninth Circuit can take years. Absent a settlement, this litigation could have continued for years before the Class Members would see any recovery, if any

recovery at all. *Frame v. Hillman*, 2002 WL 34520817, at *6 (S.D. Cal. July 31, 2002) (stating that the risks and expenses of prolonged litigation tip the scale in favor of the settlement approval).

Conversely, the Settlement at issue disposes of all litigation risks and uncertainties. Courts have acknowledged that settlements of class actions are favored when they provide immediate benefits to the class without the risk and expense involved in continued litigation. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). That is certainly the case here. This factor favors final approval.

### D. Risk of Maintaining Class Action Status Through Trial Favors Approval.

The risk that further litigation might result in no recovery for Plaintiffs is an important factor to consider. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (2002). Here, class certification was by no means guaranteed. While Plaintiffs believe that class certification was appropriate for the reasons stated in their Motion for Class Certification (Dkt. 43), Walmart heavily contested class certification. First, Walmart moved to strike Plaintiffs' expert – Dr. Drogin. If the Court agreed with Walmart that Dr. Drogin's report was inadmissible, then the ability for Plaintiffs to maintain this case as a class action would have been compromised. Second, Walmart argued that whether any individual Class Member spent greater than five minutes per shift was too individualized to maintain this case as a class action. Third, Walmart argued that the activities that each Class Member engaged in after completing the COVID screenings were highly individualized, which prevented class certification. Thus, Plaintiffs faced significant risk that their claims would not be certified, and/or that they would not prevail at trial, should this litigation continue. Accordingly, this factor weighs in favor of final approval.

### E. The Amount of the Settlement Favors Final Approval.

As the Ninth Circuit observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, when evaluating the amount offered in settlement, the Court should consider "the complete package taken as a whole," and the amount

should "not be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625-28.

Here, the settlement was reached after hard-fought, contentious arm's-length negotiations. (Ex. "2"). This case involves a range of disputed issues including the merits of Plaintiffs' claims, how much time was spent waiting in line and completing the screening, how much time was spent walking to the time clocks following the screening, the number of shifts when screenings occurred, and whether the time spent walking to the time clocks is compensable. While Plaintiffs believe that the Class Members have meritorious claims, Defendant denies, and continues to deny, each and all of the claims and contentions asserted by Plaintiffs. Likewise, Defendant disputes Plaintiffs' damages calculation.

When evaluating the adequacy of a settlement, courts balance a plaintiff's expected recovery against the value of the offer. *Tableware*, 484 F. Supp. 2d at 1080; *Portal Software*, 2007 WL 1991529, at *6. Here, the Settlement is fair and reasonable because it provides for a recovery that is approximately 98% of the amount of unpaid wages owed to the Class Members at nearly one minute of additional time worked off-the-clock as a result of the COVID screenings, assuming unpaid time on every other shift. (Ex. "2" at ¶¶ 19-22). That is the Settlement provides additional pay to the Class Members on top of the five minutes that Walmart previously paid them for screening. (*Id.*) The recovery to the Class Members is fair, reasonable, and adequate. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount of a wage and hour class action that equaled between 9% and 27% of the total potential liability was fair, adequate and reasonable given the uncertainty of continued litigation); *Thomas v. Cognizant Tech. Sols. U.S. Corp.*, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability figure).

Also, the Settlement Amount is non-reversionary and does not require Class Members to submit a claim; accordingly, the entire Net Settlement Fund is available for automatic payment to Class Members who did not opt out of the Settlement. This factor warrants final approval.

**F.  The Stage of the Proceedings and Extent of Discovery Favor Final Approval.**

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (quoting 5 W. Moore, Moore's Federal Practice, §23.85[2][e] (Matthew Bender 3d ed.)).

Here, before settling this action, the Parties had a thorough understanding of their respective claims and defenses.  Indeed, the Parties engaged in extensive merits-based and class discovery.  Both sides served initial disclosures, document requests and interrogatories. Specifically, (i) the Parties have conducted 31 depositions, (ii) Plaintiffs have propounded 29 interrogatories, six requests for admission, and 42 requests for production, (iii) Defendant has propounded 48 requests for production and 23 interrogatories to Plaintiff Haro and 48 requests for production and 23 interrogatories to Plaintiff Ortega, and (iv) Defendant has produced thousands of pages of information, including both traditional and electronic discovery. (Ex. "2" at ¶ 12).   The Parties also produced six expert reports addressing the merits of the case, damages, and class certification. (*Id.*)  Plaintiffs produced expert reports from Liesl Fox, Ph.D., Richard Drogin, Ph.D., and Steve Hopper. (*Id.*)  Walmart produced expert reports from Nathan Woods, Ph.D., Brian Grieser, and Robert Crandall.  The Parties also deposed each side's experts. (*Id.*)

In addition to the significant discovery that was completed, the Parties also engaged in extensive motion practice. (*Id.*)  Defendant filed a motion for summary judgment on June 28, 2022. (Dkt. 31).  Plaintiffs filed a substantive response to the motion for summary judgment, (Dkt. 36), and a motion to continue the motion for summary judgment. (Dkt. 34).  Plaintiffs filed a motion to certify a class under Rule 23, (Dkt. 43), and a motion for conditional certification under the Fair Labor Standards Act. (Dkt. 41).  Defendant opposed the motion for conditional certification. (Dkt. 59).  Defendant also opposed the motion for class certification. (Dkt. 58).  Additionally, Defendant filed a motion to strike the expert declaration of Dr. Drogin. (Dkt. 60). Plaintiffs moved to strike the expert declaration of Dr. Woods, (Dkt. 99), and a motion to strike the declarations submitted by Defendant in opposition to Plaintiffs' motion for class certification. (Dkt. 109). Plaintiffs' Counsel also moved to be appointed by the Court as interim class counsel. (Dkt. 72).  Findings

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and Recommendations granting the motion for appointment as interim class counsel were issued on February 27, 2023. (Dkt. 91).

At the time the Settlement Agreement was finalized, the Parties had been diligently litigating this action for over two years. This factor supports final approval.

### G.  The View of Experienced Counsel Favors Final Approval.

In contemplating the approval of a proposed settlement, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009), citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979). In fact, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig., supra*, 47 F.3d at 378); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *8 (N.D. Cal. Mar. 18, 2013).

Plaintiffs' counsel has extensive experience litigating complex class actions. (*See* Ex. "2"). Plaintiffs' Counsel believe that the Settlement is fair and reasonable and ask that the Court grant final approval. (*Id.*)  Plaintiffs' Counsel's views on this Settlement are aligned with the views of the independent mediator, because this Settlement was reached with the mediator's assistance. Accordingly, this factor weighs in favor of final approval.

### H.  The Class's Reaction to the Settlement Favors Final Approval.

The reaction from the Class Members to the Settlement has been overwhelmingly favorable.  Not one Class Member objected to the Settlement.  Further, only 19 Class Members out of over 200,000 excluded themselves.  That means approximately 99.99% of the Class Members decided to participate in the Settlement. The absence of any objections to the proposed class action settlement raise a strong presumption that the terms of the settlement are favorable. *Martin v. AmeriPride Servs*., 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *In re Omnivision Techs., supra*, 559 F. Supp. at 1043 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); *Browne v. American Honda Motor Co., Inc*., 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) ("The comparatively low number of opt-outs...indicates

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that generally, class members favor the proposed settlement and find it fair."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

This factor supports final approval of the Settlement.

## I. **The Court Should Grant Final Approval.**

"Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must be not overlooked that voluntary conciliation and settlement are preferred means of dispute resolution. This is especially true in complex class action litigation." *Id*. Here, all relevant factors, individually, and taken as a whole, weigh in favor of final approval of the Settlement.

Indeed, in evaluating the fairness of a settlement, "the settlement's benefits must be considered by comparison to what the class actually gave up by settling." *Martinez v. Knight Transp.*, 2023 U.S. Dist. LEXIS 51757, at *30 (quoting *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1123 (9th Cir. 2020)). To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Martinez v. Knight Transp*., 2023 U.S. Dist. LEXIS 51757, at *30 (quotation omitted); *see also Harris*, 2011 U.S. Dist. LEXIS 48878, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial").

But the court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Cashon*, 2023 U.S. Dist. LEXIS 169355, at *10 (quoting *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992)). Rather, the court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Id*.

Here, the amount of the Settlement is fair and adequate when viewed in light of the risks and delays associated with continued litigation. Plaintiffs believe that a conservative range

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

regarding the amount of time spent off-the-clock for COVID screenings is between is 5.18 minutes and 6.22 minutes. (Ex. "2" at ¶ 20).

Additionally, the Settlement "does not improperly grant preferential treatment to the [Plaintiffs] or segments of the class." *Portal Software*, 2007 WL 1991529, at *5. Plaintiffs will be receiving their proportionate share of the Class Damages according the same formula as the rest of the Class Members. *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it does not improperly grant preferential treatment to class representatives or segments of the class"). While the Settlement does anticipate that the Plaintiffs will receive enhancement awards, the Settlement is in no way conditioned on them receiving this award. This demonstrates that the Settlement is fair and reasonable to all. Further, attached hereto as Exhibits "4" and "5" are the Declarations of Plaintiff Haro and Plaintiff Ortega who ask that the Court grant final approval.

Moreover, the Settlement resolves the claims raised by Plaintiffs under PAGA and allocates a fair amount to the State of California. The amount allocated to the State of California is fair and reasonable because had this case proceeded to trial, the Court could exercise its discretion to award a minimal PAGA penalty given the small amount of time allegedly at issue and Walmart's efforts to pay for the time. Thus, the Settlement provides additional compensation to the Plaintiffs, allows for the Class Members to retain the five minutes they have already been paid per shift plus additional pay, and allows for a fair resolution of the PAGA claims.

In light of these facts, the Court should grant final approval of the Settlement.

## IX.    THE NOTICE TO THE CLASS MEMBERS SATISFIED DUE PROCESS

A notice of settlement must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B). "The hallmark of an adequate notice is reasonableness." *Cohorst v. BRE Properties, Inc.*, 2012 WL 153754, at *2 (S.D. Cal. Jan. 18, 2012), citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 165 (1974). The manner of giving notice and the content of the notice should "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez, supra* 563 F.3d at 962.

Here, the Notice was sent to the Class Members by electronic mail and first class mail. (Ex. "3" at ¶¶ 6 & 7). These methods were the most practicable under the circumstances. Rule 23 expressly authorizes email notice. *See* Fed. R. Civ. P. 23(c)(2)(B) (listing "electronic means" as permissible manner of providing notice of class action settlement). Indeed, the Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving notice" other than first class mail. Advisory Committee Notes to 2018 Amendments to Rule 23(c)(2).

The benefits of email notice are well known. In our modern society, people tend to change email addresses much less frequently than they change physical addresses. Because email travels with the individual, it is often a more accurate and effective form of notice than regular mail. For this reason alone, courts consistently approve notice plans that rely principally on email for reaching former-employee class members, for whom a defendant is unlikely to have a current residential address. This is especially true here, where the class includes former employees who worked for Walmart as far back as April 2020. Given the fact that Walmart's address records for some of these individuals are already over four years old, there is a real risk that these addresses are out of date.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1       This is but one reason why courts, including the Ninth Circuit,[17] courts in this district,[18]

2   and other California federal district courts,[19] "consistently approve notice programs where notice

3   is provided primarily through email." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262-64

4   (S.D. Fla. Mar. 9, 2016) (email notice provided to more than 90% of class members was "best

5   practicable notice and was reasonably calculated to apprise them of their rights"); *accord Swinton*

6   *v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2019 U.S. Dist. LEXIS 25458, at *41 (S.D.

---

[17] *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 946 (9th Cir. 2015) (affirming district court's approval of notice plan, consisting of email notice and notice by mail if email noticed bounced back); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (affirming district court's approval of class action settlement notice procedure, which was an email to class members, as well as a notice posted in a section of members' personal Facebook accounts and in the national edition of USA Today).

[18] *See, e.g.*, *Haro v. Walmart, Inc.*, No. 1:21-cv-00239-, 2024 U.S. Dist. LEXIS 47807, at *11 (E.D. Cal. Mar. 18, 2024) (approving notice plan providing for direct, individual notice by email to all settlement class members for whom a personal email address is identified, and by mail to remaining settlement class members); *Duncan v. Aliera Co., Inc.*, No. 2:20-cv-00867-TLN-KJN, 2023 U.S. Dist. LEXIS 105847, at *9 (E.D. Cal. June 15, 2023) (approving notice to all reasonably identifiable settlement class members by email, and to all others by mail); *Anderson-Butler v. Charming Charlie Inc.*, No. 2:14-01921 WBS AC, 2015 U.S. Dist. LEXIS 149080, at *9 (E.D. Cal. Nov. 3, 2015) (approving notice primarily by email without discussion); *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299, at *15-16 (E.D. Cal. Oct. 6, 2015) (approving notice by email only).

[19] *See, e.g.*, *Stewart v. Accurate Background, LLC*, No. 22-cv-01926-EJD, 2024 U.S. Dist. LEXIS 49931, at *11 (N.D. Cal. Mar. 20, 2024); *Burzdak v. Universal Screen Arts, Inc.*, No. 21-cv-02148-EMC (EMC), 2024 U.S. Dist. LEXIS 1289, at *2-3 (N.D. Cal. Jan. 3, 2024); *Habberfield v. Boohoo.com USA, Inc.*, No. CV 22-3899-GW-JEMx, 2023 U.S. Dist. LEXIS 201114, at *4-5 (C.D. Cal. Nov. 8, 2023); *Barney v. Nova Lifestyle, Inc.*, No. CV 18-10725 TJH (AFMx), 2022 U.S. Dist. LEXIS 155604, at *18 (C.D. Cal. Aug. 29, 2022); *Frlekin v. Apple Inc.*, No. C 13-03451 WHA, 2021 U.S. Dist. LEXIS 246919, at *15 (N.D. Dec. 28, Cal. 2021); *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 147383, at *24-25 (C.D. Cal. Apr. 2, 2021); *Rael v. Children's Place, Inc.*, No. 16-cv-370-GPC-LL, 2021 U.S. Dist. LEXIS 63117, at *41-42 (S.D. Cal. Mar. 31, 2021); *Perks v. ActiveHours, Inc.*, No. 5:19-cv-05543-BLF, 2021 U.S. Dist. LEXIS 57272, at *6-7 (N.D. Cal. Mar. 25, 2021); *Richards v. Chime Fin., Inc.*, No. 19-cv-06864-HSG, 2020 U.S. Dist. LEXIS 201079, at *28 (N.D. Cal. Oct. 28, 2020); *Chen v. Chase Bank United States*, No. 19-cv-01082-JSC, 2020 U.S. Dist. LEXIS 7810, at *25-26 (N.D. Cal. Jan. 16, 2020); *Corcoran v. CVS Health*, No. 15-cv-03504-YGR, 2019 U.S. Dist. LEXIS 204509, at *29-30 (N.D. Cal. Nov. 22, 2019); *Cody v. Soulcycle Inc.*, No. CV 15-6457 MWF (JEMx), 2017 U.S. Dist. LEXIS 234741, at *26 (C.D. Cal. June 22, 2017); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 U.S. Dist. LEXIS 18649, 2016 WL 613255 at *7 (N.D. Cal. Feb. 16, 2016); *Tadepalli v. Uber Techs.*, No. 15-cv-04348-MEJ, 2015 U.S. Dist. LEXIS 169076, at *36-37 (N.D. Cal. Dec. 17, 2015); *Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 U.S. Dist. LEXIS 150577, at *24-26 (N.D. Cal. Nov. 5, 2015); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. Sept. 15, 2015); *Kulesa v. PC Cleaner, Inc.*, No. SA CV 12-0725 FMO (ANx), 2014 U.S. Dist. LEXIS 194839, at *15 (C.D. Cal. Aug. 26, 2014); *Keirsey v. eBay, Inc.*, No. 12-cv-01200-JST, 2014 U.S. Dist. LEXIS 20684, at *3-4 (N.D. Cal. Feb. 14, 2014); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, 2007 WL 4105971, at *4-7 (N.D. Cal. Nov. 16, 2007).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Iowa Feb. 14, 2019) ("Courts consistently approve of email as a primary method of notice."). "In fact, email notice in class actions is becoming the preferred method of notification not only because it is reliable but it is actually more likely to be received by the Class members." *Morgan*, 301 F. Supp. 3d at 1261. For example, in *Merante v. American Institute for Foreign Study, Inc.*, the Northern District of California approved a primarily-email notice plan, finding it "constitutionally sound," and "the best notice practicable" under the circumstances, particularly given the transient nature of the employees/class members in that case. No. 21-cv-03234-EMC, 2022 U.S. Dist. LEXIS 131833, at *5 (N.D. Cal. July 25, 2022). The same reasoning applies here, where the four-year-old mailing addresses Walmart retains for its former employees are likely stale.

Additionally, among the reasons courts give for approving notice provided primarily through email is that email is inexpensive, especially compared to First Class U.S. mail. *See, e.g.*, *Morgan*, 301 F. at 1262-64. Here, email notice also provided costs savings to the Class Members. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *228 (N.D. Ga. Mar. 17, 2020), *reversed in part on other grounds*, 999 F.3d 1247 (11th Cir. 2021) ("In the Court's estimation, it would have been extremely wasteful to spend a significant portion of the settlement fund sending direct mail notice to . . . class members . . . . That would have needlessly reduced the money available to pay for the benefits to the class."); *Swinton*, 2019 U.S. Dist. LEXIS 25458, at *43-44 (expressing concern for "unreasonable" estimated cost of mail notice to class members for whom email was undeliverable, in light of amounts at issue).

Here, the Court-approved Notice plan was followed. On June 3, 2024, the Settlement Administrator mailed to 75,657 Class Members the Class Notice via first class mail. (Ex. "3" at ¶ 6). Additionally, on June 3, 2024, the Settlement Administrator emailed the Class Notice to 145,735 Class Members. (*Id*. at ¶ 7). That same day, the Settlement Administrator set up a website with the address www.HaroWalmartSettlement.com. (*Id*. at ¶ 5). The website included the Class Notice, Preliminary Approval Order, and the Settlement Agreement for all to view, download, and print. (*Id*.). The website also reminded the Class Members of important settlement deadlines, are able to obtain case relevant documents, or contact case representatives with any case related questions. (*See id*.)

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Notice package was highly informative, as it advised the Class Members in simple terms of: (1) the factual and procedural background of this action, (2) the terms of the Settlement, (3) the method of allocation of Settlement payment amongst the Class Members, (4) the Class Members' right to exclude themselves from, or object to this Settlement, or dispute the number of estimated workweeks, and (5) the Class Members' right to attend the final approval hearing. The Class Notice also informed the Class Members of the amounts that were being requested for attorneys' fees, costs, and the service awards. Further, Plaintiffs' Motion for Approval of Attorney's Fees, Costs, and Service Awards was filed on May 28, 2024. (Dkt. 143). The Class Members had the opportunity to review said Motion and object to the fees, costs, and service awards being requested.

In sum, the Notice plan was carefully tailored to apprise the Class Members of the Settlement. Thus, the Class Notice satisfies due process.

## CONCLUSION

In the judgment of Plaintiffs and Class Counsel, the proposed Settlement is fair, reasonable and adequate, and provides substantial benefits to Class Members. Plaintiffs respectfully request that the Court grant final approval of this Settlement.

Respectfully submitted,

Dated:  July 31, 2024                HODGES & FOTY, LLP


By:    _/s/ Don J. Foty_
          Don Foty
          Attorneys for Plaintiffs and Class Members

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## **CERTIFICATE OF SERVICE**

2          This is to certify that on July 31, 2024, a true and correct copy of the foregoing instrument

3   was served via the Court's electronic filing system.

4

5                                              /s/ Don J. Foty
                                               Don J. Foty
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT